**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| CHARLES TOWNSLEY, MICHAEL SAURO, WALTER NOFFSINGER, ROSA DAVIDSON, MICHAEL KELLY, TITON HOQUE, JANET GELPHMAN, THANH DO | ) ) ) ) ) ) ) | |
|      Plaintiffs, | ) | |
| v. | ) ) | Case No. 1:20-cv-00969-LY |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) **)** ) | |
|     Defendant. | ) ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION
TO MAINTAIN CONFIDENTIALITY DESIGNATIONS**

## <u>INTRODUCTION</u>

As Defendant IBM demonstrated in its Motion to Maintain Confidentiality Designations (Dkt. 59), its confidentiality designations should be upheld under this Court's Protective Order (Dkt. 35). Plaintiffs' Response in Opposition to Defendant's Motion to Maintain Confidentiality Designations (Dkt. 62-2) ("Opposition") fails to provide any basis for de-designation. Indeed, Plaintiffs ignore that this Court has already established, through entry of the governing Protective Order, the standards for proper designation of confidential documents, and they do not dispute––because they cannot—that the 61 Confidential documents and single AEO document at issue meet this standard. Instead, Plaintiffs argue that this Court should disregard its own Protective Order and the parties' agreement to be bound by its terms, and instead rely on inapposite cases from other circuits to challenge IBM's designations. These arguments are unavailing in the face of IBM's supporting evidence for each of its designations and the plain language of the Protective Order.

Likewise, Plaintiffs provide no compelling reason for the Court to decide this dispute now. Not only would deciding this now lead to multiple, additional piecemeal disputes concerning confidentiality, but it would also defeat the purpose of having a protective order—to "facilitat[e] the efficient exchange of information." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 420 (5th Cir. March 5, 2021). None of the challenged documents pertain to any of the Plaintiffs, and discovery about the Plaintiffs is just beginning. Moreover, neither side has taken any depositions, and neither side at this stage knows what documents will ultimately be filed in the public record. Judicial efficiency favors resolving all confidentiality disputes at once, and only as to the documents that will be filed. Accordingly, IBM respectfully requests that this Court grant IBM's Motion or defer ruling on it until a later time.

## ARGUMENT

### A.    IBM's Confidentiality Designations are Proper

As set forth in IBM's Motion and for the reasons set forth herein, IBM's designations are proper and should be upheld under the Protective Order.  The documents at issue plainly meet the standards set forth in this Court's Protective Order, and IBM's Motion and the supporting Declaration of Sam Ladah (Dkt. 59-2) establish particular and specific bases for maintaining all 62 challenged designations under the Protective Order.  *See In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (to show "good cause," a party must "show … a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements") (citation omitted).[1]  Plaintiffs' contentions to the contrary should be rejected:

*First*, Plaintiffs do not cite a single case holding that internal C-suite executive communications reflecting company decision-making processes—such as the majority of documents at issue here—are not entitled to confidentiality.  Instead, Plaintiffs' authorities hold that widely-distributed documents such as standard operating procedures, policies and procedures, employee training videos, safety guides, *external* communications, and documents previously produced without a protective order were not entitled to confidentiality.[2]

---

[1] Plaintiffs also again mistakenly rely on *Exeter* in support of their position that IBM has failed to meet the standard for protection here, despite *Exeter*'s clear acknowledgement that the proper standard to assess confidentiality designations made under an agreed protective order during discovery is only "good cause."  *Exeter*, 990 F.3d at 419.

[2] *See Riverkeeper v. Taylor Energy Co., LLC*, 309 F.R.D. 381 (E.D. La. 2015) (finding external communications regarding response plan for oil spill between oil company, BSEE, and U.S. Coast Guard were not confidential, while maintaining confidentiality of portion of CEO's email regarding design alternatives); *Mitchell v. Home Depot U.S.A.*, 2012 WL 2192279 (W.D. Ky. Jun. 14, 2012) (standard operating procedures and employee training manuals not confidential)*; Labbe v. Home Depot U.S.A., Inc.*, 2007 WL 1074114 (Sup. Ct. Mass. Mar. 19, 2007) (safety standards document not confidential); *Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2007 WL 3306496 (N.D. Cal. Nov. 6, 2007) (documents previously produced without confidentiality or made publicly available were not confidential); *Motto v. Corr. Med. Servs.*, 2009 WL 347432 (S.D. W.Va. Feb. 9, 2009) (hospital's general policies and procedures were not confidential); *Vignes-Starr v. Lowe's Home Centers, LLC*, 2021 WL 2548685 (W.D. Ky. June 21, 2021) (policies, procedures, and employee training materials were not confidential).

*Second*, Plaintiffs' reliance on IBM's Business Conduct Guidelines (Opp. at 4–5, Opp. Ex. 1) in support of their position that executives had no expectation of privacy in their emails is misplaced.  In context, the quoted statement clearly refers to employees' expectations of privacy *from IBM*—not expectations that internal emails may become generally available to the *public*. (Opp. Ex. 1 at 16).  Indeed, IBM's guidelines expressly warn that improper disclosure of IBM's confidential information could "threaten IBM's competitive advantage," that such information should not be discussed with "unauthorized person[s], including family members or friends," and state that violations of the guidelines may result in termination. (*Id.* at 8, 14–15).  Thus, IBM's guidelines in fact bolster IBM's showing that the executive communications here were made with a reasonable understanding they would not become public.  (*See* Dkt. 35 ¶ 3(b)).

*Third*, Plaintiffs' contention that IBM's confidential discovery should be de-designated to suit the public interest also fails.  For support, Plaintiffs rely on two lines of inapposite cases. The first involves non-parties' attempts to modify protective orders to access discovery materials for use in collateral litigation.  *Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 597 (7th Cir. 1978); *Phillips Petroleum Co. v. Pickens*, 105 F.R.D. 545, 547–51 (N.D. Tex. 1985); *Ashcraft v. La. Coca-Cola Co.*, 1986 WL 14781 (E.D. La. Dec. 19, 1986).  None of these cases support de-designating confidential discovery such that it can be *publicly* disclosed as Plaintiffs request. Rather, courts in this Circuit recognize, "[a]s a general rule, documents not yet admitted or filed with the court do not become available to the public simply because they have been produced in … discovery."  *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Ords.*, 562 F. Supp. 2d 876, 890 (S.D. Tex. 2008) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)).

The second line of cases are Third Circuit cases determining whether good cause existed for protective orders shielding disclosure of information by public officials or public entities.

*See Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994); *Shingara v. Skiles*, 420 F.3d 301 (3d Cir. 2005).  These cases are likewise inapposite for multiple reasons, including that they are out-of-circuit and involved public officials or public entities attempting to shield information of obvious interest to the public that the public would otherwise be able to access.  In contrast, here, IBM is a private entity, and this lawsuit relates only to eight former employees.[3]  For the foregoing reasons, Plaintiffs' attempts to undermine the Protective Order and IBM's good cause for its challenged designations should be rejected.

### B.     The Court Should Defer Ruling on this Dispute

As IBM explained in its Motion, there is no need for the Court to decide this issue now. (Dkt. 59 at 9–10).  Plaintiffs' arguments to the contrary should be rejected.  *First,* they again rehash (Opp. at 1–2) their arguments that the designations of these documents will impede their ability to take depositions and "plead" their case, but fail entirely to explain why since they can freely use the documents during depositions.  Even more disingenuously, they claim (*id.* at 2) that this dispute somehow prevents them from discussing the documents at issue with their clients.  Of the 62 documents at issue, only *one* document is designated as AEO.[4]  Plaintiffs' counsel are free to share and discuss the other 61 documents at issue with their clients.

---

[3] Notably, Plaintiffs' contention that the EEOC's letter of determination ("LOD") and ProPublica articles regarding IBM demonstrate a companywide scheme of discrimination is off-base.  The Fifth Circuit has recognized the limited import of EEOC LODs, which contain only "the broadest legal and factual conclusions" and no actual evidence or explanation thereof.  *E.g.*, *Wright v. Columbia Women & Childr. Hosp.*, 34 Fed. App'x 151, at *4 (5th Cir. 2002). And with respect to the ProPublica articles, another federal court recently found that these articles do nothing to prove an improper companywide practice, as they are "not based upon the personal observations of affiants sworn under penalty of perjury or on documentary evidence submitted to the Court, but rather … on a subjective synthesis of various statistics, IBM documents, and employee statements by individuals whose journalistic credentials are unknown to the Court."  *Rusis v. Int'l Bus. Mach. Corp.*, 2020 WL 1151322, at *5 (S.D.N.Y. Mar. 10, 2020).

[4] The single document that has been designated as AEO contains detailed data and models on compensation and benefits in one of IBM's business groups as compared to IBM competitors that is likely to impact IBM's competitive position if disclosed, (Ladah Dec. ¶ 26), which easily meets the definition of AEO.  *See, e.g.*, *Oncology Tech, L.L.C. v. Elekta, Inc.*, 2013 WL 12169359, at *7 (W.D. Tex. Feb. 5, 2013) (maintaining AEO protection for "information that reasonably impact[s] competitive positions in the marketplace").

*Second*, Plaintiffs claim this dispute needs to be decided now to avoid additional confidentiality disputes as discovery progresses.  This argument, too, is misplaced.  The parties have only recently begun engaging in discovery specific to the Plaintiffs in this case,[5] are still engaged in additional document discovery, and have not yet begun depositions.  It strains credulity to think Plaintiffs will not continue challenging IBM's designations as discovery progresses.  Empowering Plaintiffs to engage in piecemeal designation challenges undermines the very purpose of the Protective Order: "facilitating the efficient exchange of information." *Exeter*, 990 F.3d at 420.  To date, Plaintiffs have served IBM with extremely broad discovery requests, and IBM has been cooperative in responding to those requests with very broad productions (including over 37,000 executive-level documents), relying on proper designations under the Protective Order.  If IBM can no longer rely on the Protective Order's plain terms, discovery will inevitably slow down and become mired in additional disputes.[6]

Further, additional discovery may streamline or potentially eliminate this dispute entirely. While Plaintiffs boldly assert they will use all 62 of these documents in summary judgment briefing in 2022, they acknowledge they have not taken a single witness deposition and have asked not a single question about these documents.  None of the 62 documents relate to the Plaintiffs, several solely relate to employees outside the United States, and almost all of them pre-date any of the Plaintiffs' terminations by more than two years.  As discovery progresses, the parties will inevitably refine which documents are relevant and thus which may need to be filed of record.  Until then, the Court need not waste its limited time and resources on this dispute.

---

[5] Plaintiffs first served IBM with discovery requests pertaining to them in June 2021, and IBM responded on August 18, 2021.  IBM's production is ongoing, and IBM produced additional responsive documents on September 3, 2021.

[6] Plaintiffs already suggest (Opp. at 4) they intend to file a motion to compel discovery due to IBM's supposed refusal to produce certain data.  This is the first IBM has heard of this, and IBM is puzzled given IBM has agreed to produce data on the names and ages of individuals that reported to Plaintiffs' managers who were considered and selected for the resource actions that impacted Plaintiffs.

## CONCLUSION

For the reasons set forth herein and in the Motion, IBM respectfully requests the Court grant its Motion or defer ruling on it until any of the documents at issue need to be publicly filed.

Dated:  September 13, 2021                    Respectfully submitted,

*/s/ Edward M. "Ted" Smith*

**CORNELL SMITH MIERL**
**BRUTOCAO BURTON, LLP**
1607 West Avenue
Austin, Texas 78701
Telephone:   (512) 328-1540
Telecopy:     (512) 328-1541

Edward M. "Ted" Smith
State Bar No. 00791682
tsmith@cornellsmith.com
Andrew Broadaway
State Bar No. 24082332
abroadaway@cornellsmith.com
Alan Lin
State Bar No. 24085435
alin@cornellsmith.com

*Attorneys for Defendant*
*International Business Machines Corporation*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 13, 2021, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which sent notification of such filing to the Court and

Plaintiffs' counsel.


<u>*/s/ Edward M. "Ted" Smith*</u>
Edward M. "Ted" Smith