IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CHARLES TOWNSLEY, MICHAEL SAURO, WALTER NOFFSINGER, ROSA DAVIDSON, MICHAEL KELLY, TITON HOQUE, JANET GELPHMAN, THANH DO | § § § § § § | |
| *Plaintiffs,* | § § | |
| vs. | § § | Civil Action No.: 1:20-cv-00969-LY |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | § § § § | |
| *Defendant.* | § § | |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs Charles Townsley, Michael Sauro, Walter Noffsinger, Rosa Davidson, Michael Kelly, Titon Hoque, Janet Gelphman and Thanh Do ("Plaintiffs") file this Motion to Compel pursuant to Federal Rules of Civil Procedure § 26, 34, & 37(a), and would show the Court as follows.

**I.    SUMMARY OF MOTION**

Plaintiffs have pled an age discrimination case alleging they are victims of a scheme originating from the very highest levels of IBM that targeted its older workers in a series of layoffs ("Resource Actions") beginning as far back as 2013. This Court and others have already considered and outright *rejected* IBM's exact same discovery arguments about the exact same executive-level discrimination scheme in prior decisions. Namely, IBM unsuccessfully took the

position that it could unilaterally limit discovery from the actual layoffs and provide merely data and documents related to far smaller gerrymandered layoff sub-units.

Using identical tactics in flagrant disregard of this Court's prior precedents, IBM has again unilaterally limited discovery to gerrymandered layoff sub-units. Plaintiffs herein have propounded discovery seeking names and ages of all IBM employees contemplated and selected for three specific layoffs—Concord, Maple, and Palm—that resulted in their respective terminations. To date, IBM has refused to provide the requested discovery in part by arguing it is overbroad and should be limited—once again—to smaller layoff sub-units. This Court should once again reject IBM's failed arguments and in doing so afford Plaintiffs their day in court.

## II. RECENT DEVELOPMENTS

Although this dispute is months old, recent developments have impacted it. On Friday, February 11, 2022 at 10:09 PM CST, IBM's counsel produced four spreadsheets with the birthdates of every US based IBM "regular employee" as of December 31, 2016 and December 31, 2020. The data on these spreadsheets consist of approximately 50,000 birthdays—with zero reference to any source documents, names, or other identifying information. Mystified, the undersigned were unable to determine why—72 hours prior to Plaintiffs' expert designation deadline and immediately before the original version of this Motion to Compel was to be filed as discussed with IBM's counsel—IBM was suddenly willing to provide expansive, albeit conclusory, age information. Ten hours later, Plaintiffs discovered the reason behind IBM's self-serving production.

On February 12, 2022, the New York Times published an article regarding the recent unsealing of evidentiary filings in an age discrimination case against IBM in the Southern District of New York, which put IBM in an unfavorable light. In response, IBM's spokesperson Adam

Pratt gave a statement to the New York Times, vigorously disputing any wrongdoing. The article states:

> "Mr. Pratt said that IBM hired more than 10,000 people over 50 in the United States from 2010 to 2020, and that the median age of IBM's U.S. work force was the same in each of those years: 48. The company would not disclose how many U.S. workers it had during that period."[1]

Knowing that it was now placing expansive age information into the public domain with its defensive statement to the New York Times, IBM appeared to realize it was now undercutting its previous resistance to produce anything approaching the appropriate amount of age data in this case. The import to these Plaintiffs as it relates to the current discovery dispute is that IBM can immediately produce extensive employee age information when it suits its own purposes to counter unfavorable publicity but claims to be unable—or just unwilling—to produce it for legitimate litigation purposes.

### III.   LEGAL STANDARD

Under Rule 34, a party may request that any other party produce any designated documents or electronically stored information in the responding party's possession, custody, or control.[2] If a party fails to produce documents requested under Rule 34, the requesting party may move under Rule 37 for an order compelling production.[3] "Trial courts are afforded substantial discretion in determining whether to grant or deny a motion to compel discovery."[4] A party that opposes the

---

[1] Noam Scheiber, *Making 'Dinobabies' Extinct: IBM's Push for a Younger Work Force*, THE NEW YORK TIMES (Feb. 12, 2022), https://www.nytimes.com/2022/02/12/business/economy/ibm-age-discrimination.html?searchResultPosition=1.
[2] Fed. R. Civ. P. 34(a)(1)(B).
[3] Fed. R. Civ. P. 37(a)(3)(B)(iv).
[4] *Escamilla v. United States*, No. 14-246, 2015 WL 12732889, at *2 (W.D. Tex. Apr. 13, 2015).

Rule 34 request must "state with specificity the grounds for objecting to the request, including the reasons."[5] Rule 26(b)(1) sets out the scope of permissible discovery, stating that:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[6]

### IV. CHALLENGED OBJECTIONS AND RESPONSES

**A. Summary of challenged IBM discovery objections and responses.**

In short, Plaintiffs requested documents reflecting age demographic data for the three layoffs (a.k.a. "Resource Actions") that resulted in the termination of Plaintiffs, respectively. The three Resource Actions that resulted in the termination of Plaintiffs herein are Concord, Maple, or Palm. However, IBM has formally refused to recognize that Concord, Maple, or Palm actually *are* themselves even layoffs or resource actions, instead characterizing them as off-limits funding mechanisms. IBM insists that far smaller layoff sub-units—with gerrymandered populations— somehow *are* the actual layoffs by its own proprietary definition and has unilaterally limited discovery to those smaller gerrymandered populations. Beyond that, IBM has gone even further by explicitly limiting production even within those smaller, gerrymandered populations to only include employees under certain specific managers. IBM's discovery argument at issue failed in *Iacano*, failed in *Langley,* and are contradicted by IBM's own discovery production—and

---

[5] Fed. R. Civ. P. 34(a)(2)(B); *Walters v. Sentry Link, LLC*, 2018 WL 837611, at *3 (W.D. Tex. Feb. 9, 2018) ("The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable.") (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarle*s, 894 F.2d 1482, 1485 (5th Cir. 1990)).
[6] Fed. R. Civ. P. 26(b)(1).

deposition testimony—to date. IBM's arguments in this case should likewise be rejected outright by this Court.

    i. <u>Plaintiffs seek a global ruling that documents and age demographic data from Concord, Maple, and Palm are discoverable.</u>

Plaintiffs seek a global ruling from this Court holding that documents and data related to the Concord, Maple, and Palm IBM layoff initiatives are relevant, proportionate, and within the scope of discovery. Here, Plaintiffs' case in chief alleges and demonstrates in great detail that IBM engaged in a top-down, "Cat's Paw" discrimination scheme by utilizing high-level corporate layoff directives. These allegations are backed by EEOC investigations that came to the same conclusions.[7] Dating back to at least 2013, these rolling layoffs were companywide and were given coded names. As demonstrated *infra*, IBM executives very recently admitted under oath that such projects were indeed IBM's Resource Actions—a **brazen** slap in the face to Plaintiffs and their counsel herein who have been fed a diametrically opposed discovery position by IBM over months and months of discovery negotiations, and who have spent countless hours scouring IBM's incidentally-produced documents to write a far longer version of the motion than the one now before this Court.

    ii. <u>Plaintiffs challenge IBM's objections and responses to Requests for Production 19 & 20 and seek to compel production of responsive documents to the extent they relate to Concord, Maple, and/or Palm.</u>

Plaintiffs' Requests for Production 19 & 20 seek age demographic data for the Resource Actions that affected Plaintiffs herein.[8] Plaintiffs hereby formally challenge IBM's objections &

---

[7] *See* Ex. 2 (EEOC cause determination letter reflecting investigation findings in nationwide investigation of IBM age discrimination practices, which included investigations specifically about several of the Plaintiffs' terminations herein).
[8] *See* Ex. 4, *Def.'s Resp. & Obj. to Pls.' Second Req. for Produc. of Docs*. Nos. 19 & 20 (for ease of review, Plaintiffs have included only Defendant's General Objections, and individual Responses & Objections to Requests Nos. 19 & 20).

responses to such requests; ask that the objections be overruled; and that IBM be compelled to produce all responsive documents & data in its possession—but only to the extent they pertain to Concord, Maple, or Palm.

The remainder of this motion demonstrates how and why documents, data, and information related to the Concord, Maple, and Palm layoffs are discoverable in furtherance of Plaintiffs' top-down, Cat's Paw discrimination claims. "[U]nder Fifth Circuit law, the party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable."[9] It will be impossible for IBM to meet its legal burden given the depth of information provided herein—not to mention the ***recent testimony by IBM executives admitting to the central conclusion this entire motion seeks to prove***.

IBM executives clearly steered and monitored IBM layoffs at the Concord, Maple, and Palm level of IBM's layoff planning and execution. It is beyond time for IBM to provide the documents and data related to the same.

### V.     ARGUMENTS & AUTHORITIES

**A. Plaintiffs are legally entitled to data and information regarding the layoffs, recent company history, and company atmosphere pursuant to controlling Fifth Circuit precedent.**

The Fifth Circuit has held that "***evidence of a pattern of terminating older workers when a reduction in force occurred [allows] the reasonable inference that age had played a role in [a plaintiff's] discharge.***"[10] If company-wide patterns of discrimination are *admissible,* surely the

---

[9] *See Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung,* 325 F.R.D. 578, 593 (N.D. Tex. 2017) (holding that the 2015 amendments to Rule 26 did not change the burden of proof for parties resisting discovery) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).
[10] *McCorstin v. U.S. Steel Corp.,* 621 F.2d 749, 754 (5th Cir. 1980) (emphasis added); *see also Hodgson v. First Fed. Sav. & Loan Ass'n of Broward Cty., Fla.,* 455 F.2d 818, 823 (5th Cir.

data that makes up such patterns is at the very least *discoverable*.[11] "Courts have long recognized the importance of background information in cases of employment discrimination, including those by a single plaintiff alleging disparate treatment."[12] "An employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination."[13] "When a plaintiff must prove intentional discrimination, a district court can abuse its discretion by limiting a plaintiff's ability to show the '*atmosphere*' in which the plaintiff 'operated.'"[14]

Based on discovery already obtained and the EEOC's corroboration of the existence of IBM's discrimination practices, the requested IBM documents and data will almost undeniably contain the manner of "evidence of a pattern of terminating older workers when a reduction in force [occurred]" contemplated by the Fifth Circuit as being discoverable.[15] It will also reflect a company discriminatory "atmosphere" where (i) managers were forced to identify layoff candidates out of employee pools that specifically excluded younger employees; (ii) the company conveniently targeted divisions staffed by predominantly older workers, and (iii) employees with age-correlated metric—such as employee band level—were explicitly targeted for termination by IBM Corporate. The conclusion that information and data reflecting IBM's discriminatory

---

1972) (holding that "[c]ertainly the fact that [the plaintiff] applied for a job ***at a time when defendant was pursuing a practice of age discrimination*** in hiring is relevant to the question whether she herself was a victim of unlawful discrimination.") (Emphasis added).
[11] *See* Fed. R. Civ. P. § 26(b)(1) (containing statutory prescription for the threshold of federal discoverability, including that "information within this scope of discovery need not be admissible in evidence to be discoverable").
[12] *Thompson v. UOP, LLC*, 2021 WL 1669595, at *3 (M.D. La. Apr. 28, 2021) (citing *inter alia Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307 (1977)).
[13] *Ratliff v. Governor's Highway Safety Program*, 791 F.2d 394, 402 (5th Cir. 1986).
[14] *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 358 (5th Cir. 1995).
[15] *McCorstin v. U.S. Steel Corp.,* 621 F.2d at 754 (5th Cir. 1980).

patterns and atmospheres regarding Concord, Maple, and Palm are discoverable should be self-evident under Fifth Circuit law.

    **B. This Court and others have already rejected IBM's same "limited organizational scope" discovery tactic advanced by IBM in this lawsuit.**

        i. <u>IBM's same discovery tactic failed in *Iacano* in California.</u>

This Court and others have already rejected IBM's same discovery objections lodged in earlier lawsuits about the exact same discrimination scheme. *Iacano* was a California ADEA lawsuit filed in the Central District of California against IBM.[16] The name of the layoff that resulted in the termination of the plaintiff in *Iacano* was "Solitaire," which was a mass layoff initiative at the same level as Concord, Maple, and Palm.[17]

The *Iacano* plaintiff argued in his motion to compel that "evidence [reflecting] that a reduction in force was used [by IBM] as a systemic tool to get rid of a particular class of employees is evidence of discrimination in his individual case."[18] In rejecting IBM's argued-for limited scope of discovery, the *Iacano* court determined that "documents relating to IBM's underlying reasons that may have led to the 2016 nationwide EBU resource action that affected plaintiff and others are relevant to plaintiff's claim of age discrimination."[19] Especially pertinent in the case at bar, the Court further held in *Iacano* that:

> "[t]he fact that a specific manager identified plaintiff for layoff does not render irrelevant information, if any exists, that the company may have given direction to its managers as to the criteria—including the 'seniority mix'—that those managers might consider in making the decision, whether as to this specific employment action or such actions in general."[20]

---

[16] *See* Ex. 25, *Order Granting Pl. Iacano's Mot. to Compel Def. IBM*.
[17] *See* Ex. 25, at 2, ¶ 14–15 ("the code name used by IBM for the layoff for which plaintiff was selected was 'Solitaire'").
[18] Ex. 25, at 5, ¶ 14–16.
[19] Ex. 25, at 8, ¶ 21–23.
[20] Ex. 25, at 8, ¶ 23–17.

*Iacano*'s logic applies here. The fact that: (1) IBM stubbornly maintains that its tiny layoff subsets are the actual "resource actions" by its own strict definition, and (2) that a certain manager nominally chose each Plaintiff, respectively, does <u>not</u> "render irrelevant" or change the legal discoverability of information and data related to the Palm, Maple, and Concord that resulted in the terminations of Plaintiffs herein.[21]

    ii.    <u>IBM's same discovery tactic was rejected by this Court in *Langley*.</u>

This Court has likewise examined and **rejected** IBM's same arguments that ADEA discovery should be limited to narrow artificial boundaries created by IBM. In *Langley*, as discussed in more detail *supra*, the actual IBM Resource Action in Langley was called "Operation Baccarat." IBM nevertheless argued that discovery must be limited to one of IBM's four-letter gerrymandered layoff sub-units, which in that case was called "CLDR."[22] IBM further argued that "high level…corporate planning documents" outside of the CLDR were not discoverable because "[t]hey contain no discussion of [the plaintiff] …or the U.S.-based CLDR resource action."[23] In its rejection of IBM's proffered scope of the gerrymandered layoff sub-unit populations, this Court held as "an important caveat" that:

> The fact that IBM has chopped itself into bits and pieces for organizational purposes does not mean that discovery must remain similarly organized. The scope of discovery set by Rule 26 is not constrained by artificial borders created within a corporation. What matters is not whether any responsive document comes from the records of any particular division but whether it is relevant to a claim or defense in the case…"[24]

This Court further reiterated that "the parties should not take this as an absolute prohibition on requesting discovery of items that might be outside" of that rough proxy whenever "information [is] learned that justifies going outside of the organization for

---

[21] *Id.*
[22] *See* Ex. 26, *IBM's Resp. to Langley.'s First Mot. to Compe*l, at 3.
[23] *See id.*, at 9–10.
[24] *Langley v. Int'l Bus. Machines Corp.*, 2019 WL 369146, at *2 (W.D. Tex. Jan. 30, 2019).

targeted inquiries."[25] When this Court's discovery order was challenged by IBM, the Court instructed IBM to:

> [R]e-read [the above-quoted "caveat"] paragraph and take it to heart. IBM's internal structure is a creation of IBM. It is only one of many factors the Court will consider in determining the scope of discovery. And because the structure is a creation of IBM, the Court will look with a jaundiced eye at arguments suggesting that discovery must align with—and more importantly, be limited by—that structure.[26]

In a later order in the same case, this Court held again that "[i]t is apparent to the Court that any such [high-level corporate code-named layoff] documents are within the scope of discovery for the claims made by [the ADEA plaintiff] in this case."[27]

This Court was forced to revisit the same general issue again and noted "with a great deal of frustration that the Court is presented with yet another argument that discovery should be cabined based on an arbitrary boundary IBM created," which again dealt with IBM's attempt to limit discovery to a gerrymandered layoff sub-unit—the "CLDR"—instead of data and documents related to the real layoff Resource Action[28] called "Baccarat."[29]

The *Langley* plaintiff brought to the Court's attention numerous discrepancies which reflected that "CLDR" was a fictional boundary created by IBM, including the fact that "'CLDR' appeared out of thin air in the final phases of Operation Baccarat planning," and that "no 'CLDR' document even appeared until the month it was carried out."[30] The *Langley* Court noted those discrepancies in its order, including that "the CLDR employee group does not align with other IBM employee lists that purport to identify employees from the same groups that allegedly

---

[25] *Id.*
[26] Ex. 27, *Order Denying IBM's Mot. for Clarification in Langley*, at 2.
[27] *Langley v. Int'l Bus. Machines Corp.*, 2019 WL 1559146, at *2 (W.D. Tex. Apr. 10, 2019)
[28] "Resource Action" is IBM's sanitized proprietary term for a mass layoff.
[29] *Langley v. Int'l Bus. Machines Corp.*, 2019 WL 4577115, at *3 (W.D. Tex. Sept. 20, 2019).
[30] Ex. 28, *Plaintiff's [Second] Motion to Compel Requests for Production*, at 4.

comprised the CLDR."[31] In granting the motion to compel, this Court concluded that "IBM's insistence that it need only produce documents related to the CLDR resource action is highly suspect," further holding that "the Court *rejects* the notion that the production of documents should be limited to those relating to the CLDR layoff."[32]

This case is no different. IBM must not be allowed to traipse out the same tired, rejected arguments, effectively forcing Plaintiffs to spend their time and treasure pursuing precedentially-discoverable documents and data—all in the name of hoping its attorneys can run out the clock while the discriminatory data remains unproduced. Concord, Maple, and/or Palm are the layoffs that affected Plaintiffs herein, and all related documents and data are discoverable—*period*.

**C. The documents incidentally obtained in discovery reveal that Concord, Maple, and Palm *are* IBM's Resource Actions—and IBM's executives have subsequently admitted as much during depositions.**

i. <u>Each Plaintiff can be tied to the Concord, Maple, or Palm layoffs.</u>

The documents IBM has produced demonstrate that each Plaintiff was connected to—and laid off as a part of—either Concord, Maple, or Palm. Along with at least 12,556 of their co-workers across all five IBM Business Groups and geographies, Plaintiffs Charles Townsley, Janet Gelphman, Michael Sauro, Titon Hoque, and Michael Kelly were selected for termination as part of Project Concord.[33] For Plaintiff Townsley, the email and worksheet he was selected for layoff on was titled in part, "**Personal & Confidential – Concord List.**"[34] For Plaintiff Gelphman, IBM HR executives informed IBM Cloud executives of the layoff that ultimately resulted in

---

[31] *Langley v. Int'l Bus. Machines Corp*, 2019 WL 4577115, at *3 (W.D. Tex. Sept. 20, 2019).
[32] *Id.*(emphasis added).
[33] Ex. 7, at IBMK-000046173.
[34] *See* Ex. 8, at IBMK-TOW-0000138 (emphasis added); *see also Select IBM Docs. Responsive to Pl. Townsley's RQPDs* (containing additional evidence linking Townsley's termination to the Concord layoffs, highlighted for this Court's attention.).

Gelphman's termination using the unsubtle phrasing of "***We are a go for Project Concord***."[35] For Plaintiff Sauro, HR informed Cloud VP Kim Siegel that Sauro had been identified for inclusion in the layoff in an email titled "***Need Input Today – For Concord Employee Notification***."[36] For Plaintiff Hoque, GBS General Manager Pat Cronin was sent a list of names for layoff that included Hoque with the subject line "***Concord***."[37] Though IBM maintains Plaintiff Kelly was laid off via a Performance Improvement Plan program, documents from IBM reveal that Kelly's new manager—GTS Director David Smith—had previously already selected Kelly to be laid off as part of ***Project Concord***.[38]

Along with at least 12,556 of their co-workers across all five IBM Business Groups and geographies, Plaintiffs Rosa Davidson and Thanh Do were selected for termination as part of Project Maple.[39] Plaintiff Davidson was selected for layoff in an email partially titled "***Template for project maple***."[40] For Plaintiff Do, her first-line manager complained in an email titled "***Maple***

---

[35] Ex. 9, at IBMK-GEL-0001201 (emphasis added); *see also* S*elect IBM Docs. Responsive to Pl. Gelphman's RQPDs* (containing additional evidence linking Gelphman's termination to the Concord layoffs, highlighted for this Court's attention.).
[36] Ex. 10, at IBMK-SAU-0000395 (emphasis added); *see also Select IBM Docs. Responsive to Pl. Sauro's RQPDs* (containing additional evidence linking Sauro's termination to the Concord layoffs, highlighted for this Court's attention.).
[37] *See* Ex. 11, at IBMK-HOQ-0000113-115; *see also Select IBM Docs. Responsive to Pl. Hoque's RQPDs*, (containing additional evidence linking Sauro's termination to the Concord layoffs, highlighted for this Court's attention.).
[38] *See* Ex. 3, at IBMK-KEL-0000453 (emphasis added); *see also Select IBM Docs. Responsive to Pl. Kelly's RQPDs* (containing additional evidence linking Kelly's termination to the Concord layoffs, highlighted for this Court's attention.); *see also* Ex. 12, *IBM's Obj. & Resp. to Pl. Kelly's Interrogatories*, at 8 (#5) (claiming Kelly not terminated as part of Resource Action).
[39] *See* Ex. 13, at IBMK-000183540-183541 (10,472 employees as "Target" for Project Maple, adjusted "Outlook" of 8,940 employees).
[40] *See* Ex. 14, at IBMK-DAV-0000259 (emphasis added); *see also Select IBM Docs. Responsive to Pl. Davidson's RQPDs* (containing additional evidence linking Davidson's termination to the Maple layoffs, highlighted for this Court's attention).

– *I need to disagree*" that the layoff of Do's specialized expertise would have a negative impact on the productivity of his sub-unit.[41]

Along with at least 14,672 of his coworkers across all five IBM Business Groups and geographies, Plaintiff Walt Noffsinger was selected for termination in 2020 as part of Project Palm.[42] IBM HR discussed Noffsinger's inclusion in Project Palm in an email titled "**URGENT ACTION: PALM 2 – Additions to No Name Accrual**," and his inclusion in Palm was later confirmed in a documented containing the label "***Palm 2***."[43]

    ii.    <u>IBM's high-level corporate documents also demonstrate that Concord, Maple, and Palm are the actual layoffs that affected Plaintiffs—**not** the smaller gerrymandered sub-units pressed upon Plaintiffs by IBM.</u>

Plaintiffs need—and are legally entitled to—discovery related to Concord, Maple, and Palm to corroborate and complete the picture of what the incidental Discovery has already ***heavily*** substantiated—that IBM's corporation-wide executive layoff directives amounted to little more than an ageist "fire and hire" scheme. The EEOC has already *de facto* confirmed the existence of IBM's use of this strategy—finding specifically that between 2013 and 2018 over 86% of IBM's pool of employees considered for layoffs were ADEA-protected workers.[44] Common sense dictates this was no coincidence, and such data merits rigorous scrutiny through discovery.

One mechanism IBM is suspected of using to ensure more older employees would be terminated was to target divisions and business units staffed with predominantly older workers.[45]

---

[41] *See* Ex. 15, at IBMK-DO-0000560 (emphasis added); *see also Select IBM Docs. Responsive to Pl. Do's RQPDs* (containing additional evidence linking Do's termination to the Maple layoffs, highlighted for this Court's attention.)
[42] Ex. 16, at IBMK-000182963, *Palm Discussion Presentation*.
[43] *See* Ex. 17, at IBMK-0000844; *see also Select IBM Docs. Responsive to Pl. Noffsinger's RQPDs* (containing additional evidence linking Noffsinger's termination to the Palm layoffs, highlighted for this Court's attention.).
[44] *See* Ex. 2, at 2.
[45] *See e.g. id.*

The documents obtained incidentally from IBM's production reflect that headcount targets were—as a matter of course—handed down from on high by IBM corporate executives far above the pay grade of the managers who supposedly nominally selected each Plaintiff herein.[46]

Another mechanism IBM is suspected of using to ensure more older employees would be terminated was targeting employee band levels as an age-correlated metric.[47] A Concord layoff executive presentation prescribed as "criteria" for the layoff selections that they be "*[a]ligned to US Domestic pyramid re-shaping requirements by practice*," which refers to the intentional shaping of IBM's employee band "*pyramid*" by reducing the number of employees at higher band levels while increasing employees at the lower level of the band pyramid.[48] The goal of lowering IBM's "band mix," practice of targeting higher bands for employments, and company-mandated necessity of including employee band on all layoff identification documents is likewise found throughout IBM's own documents attached and cited herein.[49]

As reported in the *New York Times* last week:

[Newly unsealed IBM documents reveal that] top IBM executives were directly involved in discussions about the need to reduce the portion of older employees at the company, sometimes disparaging them with terms of art like '***dinobabies***.' A trove of previously sealed documents made public by a Federal District Court on

---

[46] *See e.g.* Ex. 10, 18, 19, 22, 23 & 24 (relevant portions highlighted for this Court's attention).
[47] Employees must work at IBM for many years to reach the company's higher employee band levels—such as band 10. Entry level hires typically start out much lower—such as at band 6. Higher band levels tend to almost always be staffed by older, ADEA—protected persons. *See also* Peter Gosselin and Ariana Tobin, *Cutting 'Old Heads' at IBM*, PROPUBLICA, March 22, 2018, available at https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/ ("[An] ex-employee … said a 2014 spreadsheet… labeled "IBM Confidential," was assembled to assess the job prospects of more than 600 high-level employees…[and the spreadsheet] included employees' years of service with IBM, which the former employee said was used internally as a proxy for age.").
[48] *See* Ex. 19, *Concord PowerPoint Presentation*, at IBMK-000045994 (emphasis added).
[49] *See e.g.* Ex. 19 – 21 (relevant portions highlighted for this Court's attention).

>Friday show executives discussing plans to phase out older employees and bemoaning the company's relatively low percentage of millenials.[50]

Plaintiffs already previously established that IBM's most senior executives specifically monitored the number of its employees from each generation—Baby Boomers, Gen X, Millenial, and Gen Z—and that IBM's **highest** executive expressed a desire toward manipulating its workforce even further to have an even higher percentage of Millenials.[51] The existence of the cited incriminating IBM executive documents reported on by the New York Times is no surprise to the undersigned counsel.[52]

> iii. <u>Perhaps most importantly, IBM executives have recently admitted that Concord, Maple, and Palm **are** the company's layoffs—making that point herein a *fait accompli*.</u>

Months of time were spent by defense counsel at substantial expense to prepare to demonstrate to this Court the certainty of a fact Plaintiffs' counsel already knew—that Concord, Maple, and Palm **are** the Resource Actions that stripped Plaintiffs of their jobs at IBM. During these past long months of work and conferencing, IBM's counsel have continually and obstinately endorsed the discovery fiction that Concord, Maple, and Palm are somehow <u>not</u> IBM Resource Actions at all, and correspondingly that Plaintiffs are somehow <u>only</u> entitled to smaller, gerrymandered sub-units of each of those Resource Actions—even filtering such production by yet another criteria related to respective managers. At best, IBM's counsel has been splitting hairs. At worst, they have been illegally obstructing discovery. Either way, significant effort has been wasted for something that should have been self-evident from the beginning.

---

[50] Noam Scheiber, *Making 'Dinobabies' Extinct: IBM's Push for a Younger Work Force*, NEW YORK TIMES, February 12, 2022, available at https://www.nytimes.com/2022/02/12/business/economy/ibm-age-discrimination.html. (emphasis added).
[51] *See* Ex. 1, *Millenial Executive Emails* (relevant portions highlighted for this Court's attention).
[52] *Id* at IBMK-000073352.

---

In what feels like a breath of fresh air, certain IBM executives apparently failed to get the IBM Corporate litigation memo. On February 11, 2022, IBM HR Director Laura Pimintel testified under oath that the layoff initiatives at the Concord, Maple, and Palm *are* IBM's Resource Actions.[53] Days later, IBM HR Vice President Sam Ladah confirmed that fact again under oath.[54] In a logical world focused on comity, IBM would presumably now recognize the *fait accompli* it now faces and adjust its discovery behavior accordingly. It has not. Unless or until it does so, judicial intervention will be required to force IBM to face the facts and produce age demographic documents and data related to Concord, Maple, and Palm as it should have done from the very beginning.

## VI.   PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully request that this Court grant this motion to compel; overrule IBM's challenged discovery objections; hold that the proper scope of discovery includes Concord, Maple, and Palm; order that IBM produce all age, population, and demographic data related to them; and for all other relief to which Plaintiffs may be justly entitled in law or equity.

---

[53] *See* Ex. 29, *Excerpts from deposition of L. Pimintel* (relevant portions highlighted for this Court's attention).
[54] *See* Ex. 30, *Excerpts from deposition of S. Ladah* (relevant portions highlighted for this Court's attention).

Respectfully submitted,

WRIGHT & GREENHILL, P.C.
900 Congress Avenue, Suite 500
Austin, Texas  78701
512/476-4600
512/476-5382 (Fax)

By:_____
   Heidi A. Coughlin
   State Bar No. 24059615
   hcoughlin@w-g.com
   Archie Carl Pierce
   State Bar No. 15991500
   cpierce@w-g.com
   Blair J. Leake
   State Bar No. 24081630
   bleake@w-g.com

and

By:_____
   Kaplan Law Firm
   Austin Kaplan
   State Bar No. 24072176
   akaplan@kaplanlawatx.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiffs have complied with the Court's requirement to confer. Plaintiffs have conferenced regarding this issue numerous times with IBM counsel via phone conferences and correspondence. Counsel for IBM is opposed to this Motion.

Heidi A. Coughlin

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2022, I electronically filed the foregoing Motion to Compel Production with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the Court and Defendant's counsel.

Heidi A. Coughlin