IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CHARLES TOWNSLEY, MICHAEL SAURO, WALTER NOFFSINGER, ROSA DAVIDSON, MICHAEL KELLY, TITON HOQUE, JANET GELPHMAN, THANH DO | § § § § § § | |
| *Plaintiffs,* | § § | |
| vs. | § § | Civil Action No.: 1:20-cv-00969-LY |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | § § § | |
| *Defendant.* | § § | |

## PLAINTIFFS' REPLY IN SUPPORT OF THE MOTION TO COMPEL

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs Charles Townsley, Michael Sauro, Walter Noffsinger, Rosa Davidson, Michael Kelly, Titon Hoque, Janet Gelphman and Thanh Do ("Plaintiffs") file this Reply in Support of their Motion to Compel pursuant to Federal Rules of Civil Procedure § 26, 34, & 37(a), and would show the Court as follows.

## I.     ARGUMENTS & AUTHORITIES

**A. Palm, Maple and Concord are the true "RAs". IBM's executives said as much in their emails and depositions. Now, IBM asks this Court not to believe its eyes, baldly claiming that these statements are not true. IBM instead asks this Court to believe its attorney drafted affidavits. The Court should decline this untethered invitation.**

1.      With the evidence against them and Plaintiff's motion to compel on file, IBM now desperately attempts to convince this Court that IBM's Managers were simply loose with their

language when they referred to Concord, Maple and Palm as the RA's instead of the four-letter acronym populations.[1] IBM claims that:

> "Managers within each group often used the funding name to refer to the resource action in their group (i.e., referring to "GMST" as Concord") because, as far as they were concerned, there was no need to distinguish between multiple resource actions."

**IBM does not support this statement with any reference to any documents it produced in Discovery.** Instead, IBM relies entirely on two self-serving affidavits that IBM's attorneys drafted specifically to combat this motion.[2]  Self-serving, vague and conclusory statements in an affidavit cannot defeat a motion "where the evidence in the record is to the contrary."[3] IBM's response asks the Court to adopt its position on faith alone—in direct contradiction to the evidence.[4]

2.      IBM's position is also inconsistent with that of its own executives. In *Langley*[5], IBM's Chief Human Resource Officer Diane Gherson admitted in her deposition that similarly code-named "Projects" were RAs. She said this directly without slant or surreption.[6] She stated that "[t]hey all have [code] names for their resource actions."[7]  When asked why IBM gives code names to resource actions Gherson responded, "***every project at IBM has a name*** it's one of the

---

[1] *See* IBM Resp. in Opp. to Mot. to Compel, pg. 6, Dkt. # 82; *see also* Pls. Mot to Compel, pg. 8., Dkt.

[2] *See* IBM Resp. in Opp. to Mot. to Compel, pg. 6, Dkt. # 82.2; *see also* pg. 4, Dkt. # 82.3.

[3] *Helia Tec. Res., Inc. v. GE & F Co., Ltd.*, No. CIV.A. H-09-1482, 2013 WL 3157534, at *3 (S.D. Tex. June 19, 2013) (citing *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000); *see also Lester v. Wells Fargo Bank, N.A.,* 805 Fed. Appx. 288, 291 (5th Cir. 2020) ( "attempt[s] to create a fact issue…by relying on a conclusory and self-serving affidavit is on unsteady ground").

[4] *See* Pls. Mot. to Compel, **Exs. 7 – 15.**

[5] *Langley v. Int'l Bus. Machines Corp.*, 2019 WL 369146, at *2 (W.D. Tex. Jan. 30, 2019).

[6] **Ex. 1**, *Sealed Deposition of Diane Gherson*, pgs. 22 – 23 (**Q.** Are you familiar with Operation Baccarat? **A.** It was the name of a resource action, but I honestly don't remember what year it was…").

[7] *Id.* at 23.

things that we've just always done."[8] HR Vice President Sam Ladah was deposed in this case. Within he was asked directly if "he remember[ed] the resource action Concord." His reply was simple: "I do, yes."[9]

3.      IBM's executives also referred to code-named resource actions in intracompany emails, often specifically identifying them as resource actions. On May 8, 2018—Vice President of Human Resources Alan Wild sent an email to IBM's Chief Human Resource Officer Diane Gherson.[10] Within, he updated Gherson on the status of Concord, stating that the GBS Group was behind on their headcount targets. In response, Gherson asked Wild to remind her of all the exit dates for the various waves for US employees terminated **as part of the Concord RA**.[11]

4.      On May 5, 2019—HR Vice President of Cloud Cognitive Software Nickle LaMoreaux emailed Gherson. In an email entitled Project Maple, LaMoreaux told Gherson that an organization in IBM had potentially selected 50 employees for termination in violation of the RA rules around off-shoring. LaMoreaux later relayed that some of those employees did indeed violate those principles, **so they were removed from the Maple RA**.[12]

5.      On May 22, 2019—HR Vice President Sam Ladah sent a comprehensive email to Gherson about execution strategies for the new Maple RA. Within, Ladah wrote on the numerous ways individuals in IBM would be selected for headcount reductions, in part to make room for New Collar Apprentice hires in the US.[13] He assured Gherson that all the same risk mitigation plans used previously in the Concord RA would be utilized.

---

[8] *Id*.
[9] **Ex. 2**, *Sealed Deposition of Sam Ladah*, pg. 31.
[10] **Ex. 3**, *IBMK-000046194*, pg. 1.
[11] **Ex. 3**, *IBMK-000046194*, pg. 1.
[12] **Ex. 4**, *IBMK-000157340*, pg. 1.
[13] **Ex. 5**, *IBMK-000183535*, pgs. 1 – 2.

6.      IBM's own executives and the discovery produced in this case accordingly demonstrates that the true RA populations were the companywide codenamed "Projects". As demonstrated in the Motion to Compel—Maple, Concord and Palm were the RA's that affected these Plaintiffs. IBM's discriminatory scheme to fire older workers and replace them with younger workers both domestically and through off-shoring was controlled at by IBM's CHQ and its HR department. To execute the plan, CHQ issued "targets" to the various IBM Groups with HR and Finance driven parameters and restrictions designed to make it ***impossible*** for frontline managers ***not*** to fire their older workers and still comply with CHQ's parameters. This is the definition of a cat's paw discriminatory scheme—merely modernized for the 21st century.

7.      Therefore, IBM is desperate to keep Concord, Maple and Palm discovery out of Plaintiffs' hands—because that is where the discrimination lies. Instead, IBM wants to insist that the four-letter populations are the limits of discovery because IBM wants to insist that is "the source of the complained of discrimination."[14] IBM patently misrepresents Plaintiffs' case with this statement. The four-letter populations are artificially limited and unreliable.

   **B. IBM's attorneys provided Excel Spreadsheets alleging to contain all employees considered in each four-letter population. When compared to IBM's discovery, the spreadsheets are riddled with inconsistencies.**

8.      In its response to Plaintiffs' motion to compel, IBM asserts that it has already provided "demographic data…related to the resource actions that impacted Plaintiffs."[15] In bullet point style, IBM lists all the four-letter populations that it claims captured Plaintiffs for termination. Yet IBM's own Discovery production reveals that these population groupings are entirely artificial. For example, IBM claims Plaintiff Do was terminated in the four-letter gerrymander

---

[14] *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 582 (5th Cir. 1978).
[15] IBM Resp. in Opp. to Mot. to Compel, pg. 7 Dkt. # 82.

SYMP.[16] In October of 2021, IBM's attorneys provided a spreadsheet that claims to represent all employees reporting to General Manager (GM) Robert Picciano that were considered by the "SYMP" four-letter acronym for termination.[17] The list contains 83 names, and Do's name is listed. IBM asserts in its motion that each of these data sets contain all who were "considered and/or selected" in each of the alleged four-letter RA actions that impacted the Plaintiffs.[18]

9.     Yet the list is inaccurate. In March of 2021, Do's second line manager Rex Berridge removed one Edumund Gieske from SYMP and replaced his name with Thanh Do's name.[19] Edumund Gieske's name is conspicuously absent from IBM's list of who was considered in the four-letter acronyms.

10.    Another example is IBM's claim that Plaintiff Hoque was captured by CGTZ.[20] IBM's attorneys provided another spreadsheet allegedly listing all employees reporting to GM Suresh Vaswani that were considered for CGTZ.[21] This list contains 29 names, including Plaintiff Hoque's name. Yet again the list is inaccurate—despite IBM's claim in its motion that it captured all who were considered and/or selected for CGTZ.[22]

11.    *Instead*, in March of 2018, in an email entitled "Concord"—IBM Global Transformation Leader Patt Cronin sent an email with a list of 21 names for the second wave of those to be terminated.[23] Plaintiff Hoque's name is on the top of this list. This list and the attorney provided CGTZ list contain numerous different names. Again, this is because the four-letter acronyms *are not the real and relevant populations*. Tellingly, the email was entitled Concord not CGTZ.

---

[16] IBM Resp. in Opp. to Mot. to Compel, pg. 8, Dkt. # 82.
[17] **Ex. 6**, *IBMK-D-000002*, pg. 1.
[18] IBM Resp. in Opp. to Mot. to Compel, pg. 7, Dkt. # 82.
[19] **Ex. 7**, *IBMK-DO-0000020*, pg. 1.
[20] IBM Resp. in Opp. to Mot. to Compel, pg. 6, Dkt. # 82.
[21] **Ex. 8**, *IBMK-D-000004*, pg. 1
[22] IBM Resp. in Opp. to Mot. to Compel, pg. 7, Dkt. # 82.
[23] **Ex. 9**, *IBMK-HOQ-0000016-17*.

12.     Plaintiffs can point out similarly serious inconsistencies in IBM's four-letter spreadsheets for the other Plaintiffs—(1) Plaintiff Davidson;[24] (2) Plaintiff Noffsinger;[25] (3) Plaintiff Townsley.[26] This Court has ordered that this Motion be submitted to the Court in oral argument—the undersigned can expound upon these inconsistencies then. In sum, IBM's attorney provided spreadsheets are artificial, and not reflective of the true RAs at all. These inconsistencies prove it. This Court should not limit Plaintiffs to IBM's fantasy world. Concord, Maple and Palm are real, and these Plaintiffs are entitled to discovery at the real "source of the complained of discrimination."[27]

   **C. IBM admits in Court filings that RA's were *at least* conducted at the "Group" level—yet IBM *still* restricts its age data to the arbitrarily defined sub-units tied to General Managers discussed *supra*.**

13.     In both this lawsuit and in *Meeuwen*, IBM admitted that its RA's were *at least* conducted at the "Group" level of IBM's corporate structure.[28] Plaintiffs disagree with that statement and reassert that IBM's CHQ and HR controlled the overall RA strategy, composition and project management —but Plaintiffs will assume IBM's position *arguendo* for the moment.

---

[24] **Ex. 10**, *IBMK-D-0000001*, pg. 1 (Davidson in CGMP); *compare with* **Ex. 11**, *IBMK-DAV-0000602*, **pg. 1** (email with excel attachment entitled "Maple HC Consideration List"); *compare with* **Ex. 12**, *IBMK-DAV-0000604*, **pg. 1** (excerpt of excel sheet entitled "Maple HC Consideration List" the names on which do not match IBM's attorney's representations).

[25] **Ex. 13**, *Meeuwen v. IBM*, 2:20-cv-04853, **at 5** (OHSD 2021) (IBM arguing against another motion to compel in another age discrimination case, wherein it states that the four-letter acronym DCPL covered the entire Cloud & Cognitive Software Group and included Plaintiff Bettine van Meeuwen); *compare with* **Ex. 14**, *IBMK-D-000005*, **pg. 1 – 22**.

[26] **Ex. 15**, *IBM-D-000007*, **pgs. 1 – 4** (IBM's lawyers spreadsheet of the GMST population, including Townsley); *compare with* **Ex. 16**, *IBMK-Tow-0000536*, **pg. 1** (emails with GM Carvao discussing a spreadsheet for resource action containing 264 names) *see also* **Ex. 17**, *IBMK-TOW-0000538*, **pg. 3 – 23** (the attached spreadsheet listing 264 names. These names do not all match the names IBM represented as those considered by Carvao in **Ex. 15**).

[27] *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978).

[28] **Ex. 13**, *Meeuwen v. IBM*, 2:20-cv-04853 (OHSD 2021) at 2 (claiming "each of IBM's business groups makes its own financial decisions, including when the group will engage in…a resource action"); *see also id*. **at 5** (claiming Cloud & Cognitive Software Group conducted a four-letter acronym resource action).

---

14.     At IBM, "Groups" encompass the primary "business segments" of the company. The six "Groups" are further subdivided into Business Units, with further subdivision down the line.[29] In *Meeuwen*, IBM stated "[i]n early 2020, the ***Cloud Group*** conducted a Resource Action; the resource action was denoted DCPL." IBM further went on to claim that the plaintiff, Bettine van Meeuwen, was terminated from IBM as part of the DCPL resource action—the exact same four-letter acronym IBM claims captured Plaintiff Noffsinger in this lawsuit.[30] Yet Van Meeuwen's name is conspicuously absent from the list of names IBM gave Plaintiffs in **Exhibit 13** that purports to be the names of those considered by the IBM's DCPL population.[31]

15.     Without the benefit of the true population data, this discrepancy can be explained in only one of two ways—(1) this is further proof that the four-letter acronyms are unreliable fictions IBM manipulated at will; or (2) Van Meeuwen had a different General Manager than Noffsinger, and IBM is willfully withholding the full population of data for the alleged DCPL "RA" because it wants to artificially restrict Plaintiffs' discovery in this case to an arbitrarily defined sub-unit tied to a General Manager.

16.     Assuming the latter, Plaintiffs cannot imagine a justification for this artificial restriction on IBM's ***self-admitted*** RA populations that they admit were ***planned*** at the Group level—***not the sub-unit level***. In fact, IBM's counsel has continually issued letters resisting discovery citing this claim. In November of 2021, counsel resisted discovery by arguing that the four-letter acronyms are "derived from the way that Resource Actions are actually planned by IBM, which are at the group level."[32] Counsel repeated that argument to refute Plaintiffs again after the

---

[29] **Ex. 13**, *Van Meeuwen v. IBM*, 2:20-cv-04853, **at 2 – 3** (OHSD 2021).
[30] IBM Resp. in Opp. to Mot. to Compel, pg. 7, Dkt. # 82.
[31] **Ex. 14**, *IBMK-D-000005*, **pg. 1 – 22** (listing Noffsinger as part of DCPL yet ***excluding*** any mention of Bettine van Meeuwen).
[32] **Ex. 18**, *Smith 11/01/21 Letter to Coughlin re Discovery*, **pg. 2**.

undersigned cited voluminous records contradicting IBM's position—claiming the "documents you cited in your December 15, 2021 letter simply confirm that RAs were planned at the group level."[33]

17.     IBM cannot have it both ways. If IBM's self-admitted RAs were planned at the "Group" level, then that is where IBM has *admitted* the alleged discrimination would lie in a cat's paw case. Accordingly, at a minimum, this Court should order IBM to produce data for the entire Group Level RA that affected each of these Plaintiffs. This Court has previously so ruled in *Langley*.[34] Such a ruling is necessary to end IBM's discovery games, which continue to this day.

**D. This Court previously stated it would look with a "jaundiced eye" at IBM's Discovery games. Those games continue in this case with last-minute production of obviously relevant documents *after* this motion was filed. This case thus requires the same acrid gaze. Plaintiffs ask this Court to once again order discovery controlled by Plaintiffs' proposed search terms.**

18.     In *Langley*, after tiring of virtually identical discovery tactics by IBM, this Court put a stop to the gamesmanship. In order to hold IBM accountable to its Discovery obligations, this Court rejected the notion that "the production of documents should be limited to [the four letter acronym]" and that the Court would instead "adopt the word search method proposed by [Plaintiff]" due to IBM's intransience.[35] IBM is up to its old tricks here, and has withheld documents from these Plaintiffs until this motion was filed.

19.      Plaintiffs filed this motion to compel on February 28, 2022. A mere week later, IBM produced a completely new tranche of documents encompassing more than 9,000 pages in total. Plaintiffs have now undertaken to comprehensively review those documents. In sum, this new set

---

[33] **Ex. 19**, *Smith 01/17/22 Letter to Coughlin re Discovery*, **pg. 3.**
[34] *Langley v. Int'l Bus. Machines Corp.*, No-A-18-CV-443-LY, 2019 WL 4577115, at *3 (W.D. Tex. Sept. 20, 2019) ("the Court required that IBM produce documents from the Hybrid Cloud Group related to the resource action of which Langley's termination was a part.").
[35] *Id.*

of production was not "coincidentally discovered" at a late date. Instead, it is obvious that IBM selectively organized and produced these documents in attempts to refute Plaintiffs' argument that documents have continued to be withheld. In fact, IBM's artifice is so obvious that the document production can be easily tied to individual footnotes in Plaintiffs' motion to compel, as shown by the following examples.

20.     In footnote 34 of the motion to compel (the "MTC")[36] Plaintiffs directed this Court to MTC Exhibit 8, which is a conversation chain GM Carvao had regarding Concord RA targets and employee selections. IBM "coincidentally discovered" more follow-on conversations on the same topic, and hastily produced them, which Plaintiffs have attached as **Exhibit 20** to this motion.[37]

21.     Footnote 35 of the MTC directed this Court to MTC Exhibit 9,[38] a document showing a conversation by HR Specialist Mouna with others on the Concord RA. Once again, IBM "coincidentally discovered" related conversations between these individuals during the same time frame. Plaintiffs have attached these as **Exhibit 21**.[39]

22.     Footnote 36 of the MTC cited this Court to MTC Exhibit 10,[40] a document that shows Cloud VP Siegel received notice from HR about her Concord RA targets. IBM again discovered "by coincidence" additional follow-on documents that show background conversations on this topic between other group finance and business leaders. Plaintiffs have attached these as **Exhibit 22**.[41]

---

[36] Pl. Mot. to Compel, pg. 11, Dkt # 75. (citing MTC Exhibit 8).
[37] **Ex. 20**, *IBMK-TOW-0001572 – 0001624*, **pgs. 1 – 12.**
[38] Pl. Mot. to Compel, pg. 12, Dkt # 75. (citing MTC Exhibit 9).
[39] **Ex. 21**, *IBMK – GEL – 001507 – 0001750*, **pgs. 1 – 8.**
[40] Pl. Mot. to Compel, pg. 12, Dkt # 75. (citing MTC Exhibit 10).
[41] **Ex. 22**, *IBMK – SAU – 0000778 – 0000898*, **pgs. 1 – 16.**

23.     Likewise in footnote 37 of the MTC, Plaintiffs attached MTC Exhibit 11,[42] a document containing a message from Sebastian Bainer to other GTS Group staff related to Concord including a spreadsheet with employees selected for Concord. Plaintiff Hoque is on that list. IBM coincidentally just produced numerous related conversations between these individuals. Plaintiffs have attached these as **Exhibit 23**.[43]

24.     In footnote 40 of the MTC the Court was cited to MTC Exhibit 14,[44] depicting a message to Cloud VP Wood discussing her Maple RA planning and headcount targets. IBM recently "uncovered" unproduced discovery on this topic, which Plaintiffs have attached as **Exhibit 24**. Notably, this email contains direct bullet points in contradiction to IBM's claim that CHQ did not issue headcount targets, with an entire slide entitled "CHQ Maple Targets vs Current Rollup" and a slide noting that the targets are by unit and geography and that CHQ *will hold each Group to those targets*.[45]

25.     Finally, in footnote 43 of the MTC Plaintiffs cited to MTC Exhibit 17,[46] a document showing discussions between GM Kennelly discussing with various HR executives about his headcount reduction targets. IBM subsequently produced numerous additional documents on this topic that further discuss the Palm RA targets and GM Kennelly discussing his directions received from LaMoreaux and Palm targets in the context of co-location. Plaintiffs have attached this as **Exhibit 25**.[47]

26.     All of these "newly discovered" documents existed when Plaintiffs sent out Discovery Requests in early 2021. Either they were relevant and responsive then—or not at all. IBM then

---

[42] Pl. Mot. to Compel, pg. 12, Dkt # 75. (citing MTC Exhibit 11).
[43] **Ex. 23**, *IBMK – HOQ – 002008 – 0002075*, **pgs. 1 – 5.**
[44] Pl. Mot. to Compel, pg. 12, Dkt # 75. (citing MTC Exhibit 14).
[45] **Ex. 24**, *IBMK-DAV-0000883*, pgs. 3 – 4.
[46] Pl. Mot. to Compel, pg. 12, Dkt # 75. (citing MTC Exhibit 17).
[47] **Ex. 25**, *IBMK-NOF-0001373 – 0003060*, **pgs. 1 – 7.**

withheld these documents until the last possible moment—until Plaintiffs placed similar documents before this Court in a Motion to Compel. In a knee jerk reaction, IBM scurried to produce this new **hyper tailored** tranche of documents a week later. This is not how Discovery is conducted under the Federal Rules. Parties do not get to withhold responsive Discovery until the jig is up. Now, Plaintiffs are left wondering what else IBM is "self-selecting." Accordingly, if this Court grants this motion, Plaintiffs request that in addition to the relief requested in the original Motion to Compel, that IBM be Ordered to run the following word searches and produce all documents subsequently captured by these three words—from 2017 to 2021 in the whole of IBM.

       a.  Maple

       b.  Palm

       c.  Concord

### E.  IBM's Discovery Misbehavior can find no succor in its cited case law. This Court should grant the motion to compel accordingly.

27.     IBM relies on nothing more than its self-serving affidavits to assure the Court that it did not use code-named Resource Actions to conduct company-wide layoffs. [48] IBM's own documents prove that claim false. Accordingly, IBM cites to a sea of factually irrelevant cases. The only factually relevant cases IBM's Response addresses are *Langley* and *Greshowak*—as they both involved plaintiffs alleging discrimination as part of a national top-down initiative by a corporation.[49] Plaintiffs have well briefed this Court on what they believe the *Langley* holding signifies for IBM's attempt to return to the four-letter acronym.[50]

---

[48] IBM Resp. in Opp. to Mot. to Compel, pg. 20, Dkt. # 82.
[49] *Greshowak v. Target Corp.*, No. A-06-CA-379-SS, 2007 WL 9710039, at *2 (W.D. Tex. Oct. 26, 2007).
[50] Pl. Mot. to Compel, pg. 9, Dkt # 75.

28.     In *Greshowak*, Judge Sparks examined a plaintiff's motion to compel against the Target Corporation asking for discovery into Target's alleged national policy of discrimination. First, the Court noted that "evidence of corporate policy at levels above the managers directly responsible for [plaintiff's] termination could be relevant to his claims and thus discoverable."[51] In support, the Court cited to *Marshall*, which holds that in an employment discrimination case a plaintiff is entitled to discover information necessary to establish his claim.[52]

29.     In *Greshowak*, Judge Sparks Court recognized that the Court had the discretion to order this type of discovery—but merely worried the evidence did not support what would otherwise being a fishing expedition.[53] Accordingly, *Greshowak* denied Plaintiff's motion to compel additional discovery of this national discrimination policy, because the Court found that the plaintiff had failed to offer evidence that connected the plaintiff to the alleged national discrimination.  Crucially, the Court noted that if Plaintiff had presented more than mere allegations—such as "evidence, statistical or otherwise, of a pattern or practice of age discrimination in the area and during the time he worked for the Defendant" then further discovery on the company-wide national level would have become relevant.[54]

30.     Conversely, Plaintiffs here have met this burden and then some. In litigating this issue, Plaintiffs have inundated this Court with evidence substantiating IBM's corporate-wide executive fire and hire scheme. The EEOC has already *de facto* confirmed the existence of IBM's companywide discrimination.[55] Nationally renowned media outlets like ProPublica have

---

[51] *Greshowak*, 2007 WL 9710039, at *2.
[52] *Id*. (citing *Marshall v. Westing house Elec. Corp.*, 576 F.2d 588, 598 (5th Cir. 1978).
[53] *Greshowak*, 2007 WL 9710039, at *2.
[54] *Id*.
[55] Pl. Mot. to Compel, pg. 13, Dkt # 75. (citing MTC Exhibit 2).

written lengthy investigatory pieces about IBM "cutting old heads."[56] If this isn't a case that warrants discovery of a nationwide corporate scheme—then no such case exists. The motion should accordingly be granted.

## II.    <u>PRAYER</u>

31.     WHEREFORE PREMISES CONSIDERED, Plaintiffs request that the Motion to Compel be granted in all respects and for all other relief to which party may be justly entitled in law or equity.

Respectfully submitted,

WRIGHT & GREENHILL, P.C.
900 Congress Avenue, Suite 500
Austin, Texas  78701
512/476-4600
512/476-5382 (Fax)

By:_____
    Heidi A. Coughlin
    State Bar No. 24059615
    hcoughlin@w-g.com
    Archie Carl Pierce
    State Bar No. 15991500
    cpierce@w-g.com
    Blair Leake
    State Bar No. 24081630
    bleake@w-g.com

    and

By:_____

---

[56] Peter Gosselin and Ariana Tobin, Cutting 'Old Heads' at IBM, PROPUBLICA, March 22, 2018, available at https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/

Kaplan Law Firm
Austin Kaplan
State Bar No. 24072176
akaplan@kaplanlawatx.com

**Counsel for the Plaintiffs**

CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2022, I electronically filed the foregoing Motion to

Exceed Page Limit with the Clerk of the Court using the CM/ECF system, which sent

notification of such filing to the Court and Defendant's counsel of record.

_____

Heidi A. Coughlin