**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| CHARLES TOWNSLEY, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:20-cv-00969-DAE |

**DEFENDANT INTERNATIONAL BUSINESS MACHINES CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF MARK RAMBIN**

Defendant International Business Machines Corporation ("Defendant" or "IBM"), files this Reply in support of its Motion to Exclude the Expert Report and Testimony of Mark Rambin (the "Motion") (Doc. 98).

Plaintiffs' Response to IBM's Motion (the "Response") (Doc. 107) does not alter the fact that Rambin's opinions are unreliable and unsupported. Plaintiffs make a series of meritless arguments as to why Rambin's flawed front pay analysis should not be excluded. *First*, they argue that Rambin's front pay calculations should be subject to a relaxed *Daubert* standard because front pay is an issue for this Court, rather than the jury, to decide. There is no legal support for Plaintiffs' position in the Fifth Circuit, where courts have excluded expert testimony on front pay as both unreliable and irrelevant. *Second*, they argue that relying only on national work-life statistics and Plaintiffs' own self-serving testimony is fully appropriate, but both positions are contrary to Fifth Circuit precedent and cases they cite. *Third*, they claim that Rambin does not need to take mitigation efforts into account, but this too is inconsistent with precedent in this jurisdiction.

Likewise, Plaintiffs fail to establish that Rambin's unreliable fringe benefits analysis should not be excluded. They mistakenly claim that Rambin's fringe benefits percentage is supported by IBM's expert, Dr. Dwight Steward, when Steward's method would actually result in a fringe benefits percentage nearly 20 percentage points lower than the percentage used by Rambin in his calculations. They provide no other support for Rambin's made-up methodology. Moreover, they proffer no explanation as to why Rambin's decision to disregard Plaintiffs' actual occupations results in reliable calculations. And Plaintiffs fail to cite any support for the proposition that fringe benefits damages should continue even after a Plaintiff obtains similar fringe benefits.

Finally, while Rambin has attempted to correct some of the errors in his original report, his Supplemental Report ("Supplemental Report") (Doc. 107-4)[1] is still littered with uncorrected

[1] To the extent Rambin's Supplemental Report retains the same methodological and factual errors as contained in his Original Report and addressed by IBM's Motion and this Reply, the Court should similarly exclude Rambin from offering those opinions in his Supplemental Report.

inaccuracies and mistakes. Accordingly, this Court should exclude Rambin's Report, Supplemental Report, and testimony pursuant to Federal Rule of Evidence 702.

## I. Rambin's Flawed Front-Pay Analysis Should be Excluded

### A. There is no "lesser" or "relaxed" *Daubert* standard in the Fifth Circuit for front pay issues.

Plaintiffs first incorrectly claim that there is a "relaxed" standard for expert testimony relating to front pay issues because the court decides front pay. *See* Doc. 107 at ¶¶ 6-10. This is simply inaccurate. Indeed, district courts in the Fifth Circuit have ***excluded*** expert testimony on the issue of "front pay" where, like here, it is unreliable. *McCarty v. City of Southside Place*, No. 4:15-cv-01214, 2016 U.S. Dist. LEXIS 138499, at *14-18 (S.D. Tex. July 15, 2016). Critically, the court in *McCarty* did not mention any such relaxed standard in concluding that the plaintiff failed to show that his expert's opinions were "based upon sufficient facts and scientific knowledge to meet the reliability requirements of Rule 702." *Id.* at *17. The court there also separately concluded that even if the expert's front pay calculations were reliable, they were also not relevant because the court would decide front pay, and thus may be confusing to the jury. *Id.* at *18.

Likewise, none of the cases Plaintiffs cite for this proposition actually reference a "lesser" standard being applied specifically to front pay challenges; in fact, other cases referenced by Plaintiffs analyze front pay calculations under the typical *Daubert* standard. *See Ashford v. Wal-Mart Stores, LP*, No. 1:11-cv-57-HSO-JMR, 2013 U.S. Dist. LEXIS 5845, at *10-12 (S.D. Miss. Jan. 15, 2013) (applying *Daubert* to front pay analysis). Indeed, the one case Plaintiffs cite that references a purportedly "relaxed" standard, *McCordquodale v. DG Retail, LLC*,[2] is an out-of-circuit case referencing the fact that there may be a relaxed standard in ***bench*** trials—which this

---

[2] Likewise, the two Fifth Circuit cases Plaintiffs reference also pertain to trials that are, unlike this matter, going to be handled specifically by a judge and not a jury.

case is not. No. 20-cv-518 (ECT/JFD), 2022 U.S. Dist. LEXIS 43630 (D. Minn. Mar. 11, 2022). Moreover, the court in that case declined to exclude an expert's front pay analysis merely based on the expert's failure to reduce the estimates to present value. *See id.* at *51. Here, Rambin's errors in using incorrect assumptions as to how long each Plaintiff would work go to the fundamental reliability of the opinion and must be excluded under any standard as both unreliable and irrelevant to the jury.

**B. Rambin's opinions on front pay are unreliable because he uses the improper retirement age for certain Plaintiffs and fails to consider mitigation efforts.**

Plaintiffs also make a series of meritless arguments as to why Rambin's front pay analysis should not be excluded. *First,* they argue (Doc. 107 at ¶¶ 16-18) that Rambin's reliance on national work-life statistics is acceptable and not grounds for exclusion, relying solely on *Garcia v. City of Amarillo, Texas*, No. 2:18-cv-95-Z-BR, 2020 U.S. Dist. LEXIS 177001 (N.D. Tex. Feb. 26, 2020). However, Plaintiffs overstate the facts in *Garcia*. Importantly, in *Garcia,* the court declined to strike an expert report where the expert relied on not only national statistics, ***but also*** information listed in the plaintiff's former employer's own defined benefit plan. *Id.* at *19-20 ("Hayes relied on the methodology in the vested retirement benefit calculation report contained in Plaintiff's defined benefit pension plan"). Here, Rambin fails to consider not only any evidence specific to Plaintiffs, but also any evidence specific to IBM or the industry in which the Plaintiffs worked.

*Second*, Plaintiffs also wrongly argue (Doc. 107 at ¶¶ 19-23) that it is appropriate for Rambin to rely solely on self-serving interviews with Plaintiffs to establish their retirement ages because courts have only excluded such statements in the personal injury context. As explained in detail in IBM's Motion, the Fifth Circuit has held that "[i]t may be shown by evidence that a particular person, by virtue of his health or occupation or other factors, is likely to live and work a longer, or shorter, period than the average. Absent such evidence, however, computations should

be based on the statistical average." *See Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475, 478 (5th Cir. 1984). Consequently, work life statistics – rather than self-serving interviews – should be utilized unless there is objective evidence that a Plaintiff would live and work longer, or shorter, than the average retirement age. Many courts dealing with different causes of action, including employment cases, have applied this standard.[3] For example, in *Russell v. Allianz Life Ins. Co. of N. Am.*, No. 3:13-CV-00030-DMB-JMV, 2015 U.S. Dist. LEXIS 1946 (N.D. Miss. Jan. 8, 2015), the court applied *Madore*, and held that the expert's opinion that the plaintiff would retire at 80 years old was unreliable under Rule 702 because the expert merely relied on the plaintiff's self-serving statements and failed to provide any other indication as to how the expert might have otherwise arrived at the work-life expectancy opinion. *See id.* at *14-18.[4] Here, as in *Russell*, Rambin provides no evidence other than Ms. Davidson, Mr. Hoque, Mr. Noffsinger, and Mr. Sauro's self-serving statements that they each intended to retire at the age of 70.[5] Nor do Plaintiffs

[3] Plaintiffs' attempt to narrow the application of this standard to only personal injury cases is unavailing. Contrary to Plaintiffs' assertion, establishing a retirement age in employment law cases from which to calculate estimated front pay damages is similarly an "area ripe for regular exaggeration." Doc. 107 at ¶ 20. It only stands to reason that an employee seeking to recover damages would overestimate the length of time he/she intends to work to obtain higher damages. Indeed, Mr. Sauro appears to be doing just that, asserting that he plans to work until age 70, when in actuality, Mr. Sauro has performed only minimal work as a contractor since leaving IBM and has listed himself as "retired" on tax documents. *See* **Ex. 1**, Declaration of Andrew Broadaway, its **Ex. A** (Excerpts from Deposition of M. Sauro) at 102:15-103:17; Doc. 98-1, p. 45.

[4] The case to which Plaintiffs cite in support of their contention that an individual's self-serving statement in a discrimination case is sufficient to establish retirement age should not be given weight—the opinion is from nearly twenty years ago, fails to discuss or address *Madore* and why it should not apply, and fails to explain what the "evidence" was that it found sufficient to support a "different conclusion" of not relying on the statistical averages. *See Owens v. Excel Mgmt. Servs.*, No. 3-02-CV-0835-L, 2003 U.S. Dist. LEXIS 20296, at *12 (N.D. Tex. Nov. 10, 2003).

[5] It is noteworthy that Ms. Davidson, Mr. Hoque, Mr. Noffsinger, and Mr. Sauro, who were each allegedly interviewed by Rambin (separately) all somehow stated the exact same anticipated retirement age: 70 years old. Doc. 107-4, pp. 25, 33, 38, 41.

claim that they plan to provide such evidence. *See Mays v. Chevron Pipe Line Co.*, No. 14-03098-BAJ-CBW, 2019 U.S. Dist. LEXIS 8049, at *3-4 (W.D. La. Jan. 16, 2019) (excluding expert testimony because no support was provided that plaintiffs would work until their full Social Security retirement age and plaintiffs did not indicate they would offer such evidence at trial). Consequently, Rambin's opinions relating to the retirement age of Ms. Davidson, Mr. Hoque, Mr. Noffsinger, and Mr. Sauro should be excluded because they are not based on proper methodology and are thus unreliable.

*Third*, Plaintiffs' claim (Doc. 107 at ¶¶ 24-26) that Rambin did not need to consider mitigation efforts because he is not a "vocational expert or job recruiting expert" ignores the fact that despite Rambin not being a vocational or job recruiting expert, he still has to factor mitigation efforts into his opinion on front pay. *See id.* at ¶ 25. "It is well-settled that an award of front pay damages 'should reflect earnings in mitigation of damages.'" *McCarty*, 2016 U.S. Dist. LEXIS 138499 at *15 (internal citation omitted). Importantly, the court excluded an expert's testimony regarding front pay when the expert blindly assumed that a plaintiff would never reenter the workforce without considering any of the factors relevant to front pay. *See id.* at *15-17. The Fifth Circuit has also upheld a district court's finding that an expert's front pay calculations were too speculative to be reliable because the expert "assumed that [the plaintiff] would remain employed with [his current employer] despite the fact that it underwent massive layoffs," and because he "presumed that [the plaintiff] would continue to incur future wage loss through the age of 70." *See Masinter v. Tenneco Oil Co.*, 929 F.2d 191, 193 (5th Cir. 1991). Consequently, the fact that Rambin is not a vocational or job recruiting expert does not let him off the hook from taking mitigation efforts into consideration in fashioning a front pay award. Rambin's failure to factor mitigation efforts into his opinion on front pay awards renders such opinions unreliable.

## II. Rambin's Fringe Benefits Calculations Are Likewise Unreliable.

### A. Rambin does not calculate the fringe benefits multiplier using the same methodology as Dr. Steward.

In their Response, Plaintiffs claim that "Rambin's calculation of Plaintiffs' fringe benefit multiplier is demonstrably reliable and permissible" because IBM's expert "affirms the simple math Rambin utilized to arrive at his salary fringe benefit multiplier of 44.38%." Doc. 107 at ¶ 46. This is not an accurate representation of Dr. Steward's endorsed methodology. The purportedly simple math that Rambin utilizes to arrive at his multiplier is flawed because Dr. Steward does not endorse including ***wage-related benefits*** when determining the salary fringe benefit multiplier. Doc. 107-7, p. 2 ("Fringe benefits are the ***non-wage benefits*** that an employer provides [and includes] life insurance, health insurance, retirement benefits, social security contributions, unemployment insurance, and worker's compensation insurance.") (emphasis added). Indeed, Dr. Steward's book is very clear that to determine the salary fringe benefit multiplier, the proper methodology is to divide the yearly value of ***non-wage*** fringe benefits by the individual's yearly wages and salary. *Id.* at p. 3. The reason that wage-related benefits (such as paid leave and supplemental pay) are excluded from the fringe benefit calculation is because they are actually a component of an individual's overall salary. *See* **Ex. 2**, Declaration of Dr. Dwight Steward ("Steward Decl."), at ¶ 4.

Rambin's methodology ignores this differentiation and improperly includes wage-related benefits in his calculation and thus inflates the salary fringe benefits multiplier used in his calculations. Indeed, Rambin testified that he simply took total benefits ($22.50) from the "Management, business, and financial" category, and divided that by total wages and salaries ($50.70) to arrive at 44.38%. *See* Doc. 98-1, its Ex. A (Rambin Dep.), at 14:17-20 and Ex. 7. However, Dr. Steward's methodology would remove the cost of wage-related benefits such as paid

leave ($7.13) and supplemental pay ($3.35) from the calculations, resulting in a total cost of ***non-wage*** fringe benefits of $12.02. Ex. 2, Steward Decl., at ¶ 6. Dividing the total cost of non-wage fringe benefits ($12.02) by total wages and salary ($50.70) is 23.7%, nearly 20 percentage points lower than the fringe benefit multiplier used by Rambin in his calculations. *See id.*

Consequently, contrary to Plaintiffs' assertion, Rambin did not calculate the fringe benefits multiplier in the way as Dr. Steward endorses in his book. Plaintiffs offer no other support for Rambin's methodology (i.e., that it has been tested or used by other experts). They rely solely on the unfounded assertion that Rambin followed the standard used and endorsed by Dr. Steward, which he has not. Therefore, Rambin's opinions on back pay and front pay that utilize a 44.38% salary benefits multiplier should be excluded because such opinions are based on Rambin's unreliable methodology.

**B. Rambin's opinions relating to fringe benefits are also defective because he fails to consider Plaintiffs' job titles and responsibilities and does not appropriately cease calculating fringe benefits.**

In his Supplemental Report, Rambin continues to arbitrarily apply the same fringe benefits multiplier—those applicable to "Management, business and financial" workers—to his calculations for all Plaintiffs, which Plaintiffs contend is appropriate based on Plaintiffs' income level. *See* Doc. 107-4; Doc. 107 at ¶¶ 50-52. This methodology is unreliable and not grounded in any precedent. Indeed, if salary was the only factor in the amount of fringe benefits an employee could expect to receive from an employer, there would be no need for the Bureau of Labor Statistics to issue charts listing various professions and regions that show how fringe benefits fluctuate based on the job a person holds and where they live. *See* Doc. 107-6, p. 8.

This issue is highlighted by the fact that some of the Plaintiffs—namely Mr. Townsley, Ms. Davidson, Ms. Gelphman, and Mr. Kelly—held sales and/or non-managerial roles (of which Rambin admitted he was aware). Yet Rambin decided to completely ignore the row for "Sales and

related" workers merely because another row—despite it not being an accurate reflection of those employees' job responsibilities—contained a higher and more favorable wages and salary number. *See* Doc. 98-1, its Ex. A (Rambin Dep.), at 15:12-24, 21:6-22. This sort of arbitrary selection of national averages lacks foundation and warrants exclusion.

Moreover, Plaintiffs misunderstand *Joffe*'s similarity to the circumstances here. The court in *Joffe* did not hold that national averages could never be used, but instead that national averages could not be used if the figure was not tied to the plaintiff's profession and region in which she worked. *See Joffe v. King & Spalding LLP*, No. 17-CV-3392 (VEC), 2019 U.S. Dist. LEXIS 163671, at *23-24 (S.D.N.Y. Sept. 24, 2019). This holding is in line with the Fifth Circuit cases to which Plaintiffs cite that have allowed experts to use national averages when it actually ***makes sense***. Rambin's arbitrary selection and application of the "Management, business, and financial" category averages to all Plaintiffs fails to withstand scrutiny. Consequently, like in *Joffe*, there is no explanation as to why the nationwide figure Rambin selects for the Plaintiffs (despite their actual jobs) is an appropriate estimate for fringe benefits. Rambin's opinions regarding the fringe benefits multiplier, particularly with respect to Mr. Townsley, Ms. Davidson, Ms. Gelphman, and Mr. Kelly, should be excluded because they are unsupported and have no factual basis.

**C. Rambin incorrectly includes fringe benefits in front pay awards for Plaintiffs that have obtained comparable benefits.**

Rambin's Supplemental Report continues to inappropriately include lost fringe benefits in the front pay award for the Plaintiffs that have obtained subsequent employment. *See* Doc. 107-4. While Plaintiffs claim that IBM is only entitled to an offset when an individual obtains subsequent employment that provides similar benefits instead of a complete cessation of benefits, none of the cases they cite to actually apply this theory to an award of fringe benefits in a front pay calculation. Doc. 107 at ¶¶ 29-31. Indeed, *Palasota* states that "an award of front pay is meant

'to compensate the plaintiff for wages and benefits he would have received from the defendant employer in the future if not for the discrimination,'" but does not state anything regarding what happens if a plaintiff obtains subsequent employment with comparable benefits. *See Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 490 (5th Cir. 2007).

Here, Rambin has already admitted that the non-wage fringe benefits certain Plaintiffs—namely Mr. Hoque and Ms. Davidson—are receiving from their subsequent employer are comparable to what they received at IBM. Doc. 98-1, its Ex. A (Rambin Dep), at 23:13-24:4, 39:24-40:4, 73:2-6, 101:6-13. Thus, there are no non-wage fringe benefits for which IBM would be responsible for even if discrimination is found. This is in line with *Palasota*'s holding. Moreover, other courts have held that if a plaintiff is able to mitigate the amount of the fringe benefits award, such amount would not be included in front pay. *See Prine v. Sioux City Cmty. Sch. Dist.*, 95 F. Supp. 2d 1005, 1014-15 (N.D. Iowa 2000) (holding that it was unlikely that plaintiff would receive fringe benefits upon re-entry to the work force on a part-time basis which foreclosed her ability to mitigate the amount of fringe benefits awarded). As a result, Rambin's failure to stop tabulating lost fringe benefits after certain Plaintiffs obtained subsequent employment with comparable benefits is fundamentally unsupported.

**III. Rambin's Supplemental Report continues to be littered with inaccuracies and errors.**

Rambin, despite issuing a Supplemental Report, continues to put forth erroneous calculations based on improper assumptions and inaccurate facts—thereby rendering his calculations wholly unreliable and constituting additional grounds for their exclusion. Indeed, Rambin's errors continue to permeate his calculations for every remaining plaintiff.

In addition to the errors discussed above and in IBM's Motion that are applicable to more than one plaintiff, the following issues continue to remain uncorrected:

- **Charles Townsley.** In his Supplemental Report, Rambin continues to calculate Mr. Townsley's IBM salary based on an arbitrary average of Mr. Townsley's actual IBM earnings for the previous five years—even though Mr. Townsley testified that his job role changed in 2016. *See* Doc. 107-4, p. 45.

- **Michael Sauro.** Although Rambin admits that pension fund distributions are considered "taxable income" by the IRS, he continues to neglect the distributions Mr. Sauro received from IBM's pension fund in his calculations. *See* Doc. 107-4, p. 42. Mr. Sauro's pension fund distributions should be considered. *See Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 210 (5th Cir. 1986) (reducing a back pay award by payments received from retirement funds). Furthermore, Rambin continues to neglect the fact that Mr. Sauro unequivocally represented to the IRS that he was "retired." *See* Doc. 107-4, p. 42 (calculating estimated damages through 2024). This error is particularly glaring given that Rambin accepts without question Mr. Sauro's self-serving statement that he intends to work until age 70. Rambin's selection of which of Mr. Sauro's statements to incorporate into his calculations is arbitrary and therefore unreliable.

- **Thanh Do.** Rambin continues to ignore the 24-week time frame after which it would be reasonable to expect Ms. Do to find a comparable employment position. Rambin simply takes Ms. Do's representation that she has not found employment as the basis for his estimation that Ms. Do should receive front pay through 2027. *See* Doc. 107-4, p. 29.

- **Rosa Davidson.** Rambin continues to disregard Ms. Davidson's ability to earn $15,000 in bonuses at her subsequent employer, which could result in Ms. Davidson's salary at Cognizant Technology exceeding her estimated salary at IBM—thereby ceasing her accumulation of any estimated damages immediately. *See* Doc. 107-4, p. 26.

- **Walter Noffsinger.** Rambin continues to include Mr. Noffsinger's Restricted Stock Units earnings in his estimation of Mr. Noffsinger's projected annual earnings from IBM. *See* Doc. 107-4, p. 39. Yet Rambin does not provide any basis for his assumption that Mr. Noffsinger would continue to receive Restricted Stock Units in subsequent years or their projected value.

Despite Plaintiffs' protest, Rambin's flawed methodology and erroneous factual assumptions continue to be reflected in his Supplemental Report. As such, his opinions are unreliable and should be excluded.

## CONCLUSION

For the reasons stated above, IBM respectfully requests that this Court grant its Motion and wholly exclude the testimony and Reports of Mark Rambin. IBM also requests such other and further relief, whether legal or equitable, to which it is justly entitled.

Respectfully submitted,

By: */s/Edward M. ("Ted") Smith*
Edward M. "Ted" Smith
State Bar No. 00791682
tsmith@cornellsmith.com
Andrew Broadaway
State Bar No. 24082332
abroadaway@cornellsmith.com
Alan Lin
State Bar No. 24085435
alin@cornellsmith.com

**CORNELL SMITH MIERL BRUTOCAO BURTON, LLP**
1607 West Avenue
Austin, Texas 78701
Telephone: (512) 328-1540
Telecopy: (512) 328-1541

**ATTORNEYS FOR DEFENDANT INTERNATIONAL BUSINESS MACHINES CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2022, I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the Court and Plaintiffs' counsel of record.

*/s/ Edward M. "Ted" Smith*
Edward M. "Ted" Smith