## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **NANCY KINNEY, CHARLES** | § | |
| **TOWNLSEY, MICHAEL SAURO,** | § | |
| **WALTER NOFFSINGER, ROSA** | § | |
| **DAVIDSON, MICHAEL KELLY,** | § | **No. A-20-CV-00969-DAE** |
| **ALVARO PAIZ, TITON HOQUE,** | § | |
| **THANH DO, JANET GELPHMAN,** | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **INTERNATIONAL BUSINESS** | § | |
| **MACHINES CORPORATION,** | § | |
| *Defendant* | | |

### ORDER

Before the Court is Defendant International Business Machines Corporation's ("IBM") Motion to Exclude Expert Report and Testimony of Mark Rambin, Dkt. 98, Plaintiffs' Response, Dkt. 107, and IBM's Reply, Dkt. 113. The District Court referred the motion to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

### I.    BACKGROUND

This is an age discrimination case in which the remaining eight named Plaintiffs sue their former employer, IBM, for age discrimination under the Age Discrimination in Employment Act ("ADEA") and "applicable state laws protecting citizens from discrimination on the basis of age." Plaintiffs allege that IBM's highest executives created and attempted to conceal a scheme with the goal of replacing

IBM's then workforce with younger employees. Plaintiffs allege IBM designed rolling layoffs that disproportionately targeted and terminated older workers, and gave older workers baseless negative performance reviews to justify their subsequent terminations. IBM then simultaneously hired younger employees en masse to replace the laid off older employees. Plaintiffs assert that IBM often changed job titles and shifted divisional structures to hide the allegedly discriminatory layoffs. Specifically, IBM explicitly excluded younger employees, or "Early Professional Hires," from the rolling layoffs.

IBM now moves to exclude the testimony of Plaintiffs' damages expert, Mark Rambin, who is a Certified Forensic Accountant. IBM asserts that Rambin's opinions regarding Plaintiffs' economic damages are based upon unreliable methodology, are factually unsupported, and based upon incorrect assumptions. Dkt. 98, at 2. Plaintiffs oppose the motion, arguing that Rambin's testimony and report should not be excluded.

## II.      LEGAL STANDARD

The Supreme Court of the United States acknowledged in *Daubert v. Merrell Dow Pharmaceuticals* that Federal Rule of Evidence 702 is the proper standard for determining the admissibility of expert testimony. 509 U.S. 579, 597–98 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

2

(b)     the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under *Daubert*, a trial court acts as a "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147. Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not admit testimony that is based purely on the unsupported assertions of the expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

In addition to being qualified, an expert's methodology for developing the basis of his or her opinion must be reliable. *Daubert*, 509 U.S. at 592-93; *Moore*, 151 F.3d at 276. "The expert's assurances that he [or she] has utilized generally accepted scientific methodology is insufficient." *Moore*, 151 F.3d at 276. Even if the expert is qualified and the basis of his or her opinion is reliable, the underlying methodology must have also been correctly applied to the case's particular facts in

3

order for the expert's testimony to be relevant. *Daubert*, 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. Fed. R. Evid. 104(a). The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276.

## III.    DISCUSSION

IBM complains that Rambin's expert testimony should be excluded because: (1) his front pay analysis is flawed because he uses "estimated work-life expectancy", the Plaintiffs' own statements that they plan to work until 70 and statements about their mitigation efforts as the basis for his analysis; (2) his opinions fail to account for the updated discount rate; (3) his analysis of fringe benefits is improper because it includes lost fringe benefits analysis for Plaintiffs who received fringe benefits from new employers comparable to those they received at IBM, and did not use an individualized assessment of fringe benefits but a percentage multiplier;  and (4) his report is rife with errors and inaccuracies. Dkt. 98, at 2.

### A.    Exclusion of Front-Pay Analysis

IBM asserts that Rambin's analysis of the Plaintiffs' front pay damages should be excluded as unreliable because it is based upon incorrect methodology, is factually unsupported, and is based upon improper assumptions regarding how long

4

each Plaintiff would have worked until retirement. Specifically, IBM complains about: (1) assumptions that Plaintiffs would work to a certain age based upon inapplicable work-life expectancy analysis and their own statements; and (2) failure to include potential mitigation of damages through other employment.

Plaintiffs respond that that the Court ultimately makes any determination of front pay, which is an equitable award, thereby obviating the need of analysis of the expert's report and testimony pursuant to *Daubert*. Moreover, Plaintiffs argue that to the extent the Court might submit the front pay issue to the jury on an advisory basis, Rambin's report withstands a *Daubert* challenge.

Front pay is an equitable remedy to be determined by the court; it is not awarded by the jury. *See Julian v. City of Houston*, 314 F.3d 721, 729 (5th Cir. 2002); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 823-24 (5th Cir. 1990) ("As an equitable remedy under federal law, we believe that it was within the district court's discretion to determine the amount of the front pay award."). Front pay is intended "'to compensate the plaintiff for lost future wages and benefits.'" *Mota v. Univ. Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 526 (5th Cir. 2001); *see also Pollard v. E.I. du Pont Nemours & Co.*, 532 U.S. 843, 846 (2001) ("[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement."). The Fifth Circuit has recognized that front pay calculations are "inherently speculative," but may be calculated through "intelligent guesswork." *Osborn v. Computer Sciences Corp.*, No. A-04-CA-

5

158-LY, 2005 WL 5881949, at *4 (W.D. Tex. 2005); *Galvan v. City of San Antonio*, No. SA-07-CA-371-OG, 2008 WL 5504697, at *2 (W.D. Tex. Sept. 17, 2008).

In awarding front pay, courts typically hold evidentiary hearings and consider the length of prior employment, the permanency of the position held, the nature of work, the age and physical condition of the employee, and the possible consolidation of jobs and the myriad other nondiscriminatory factors which could validly affect the possible employment relationship. *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991).

Thus, any flaws in Rambin's opinions regarding front pay will be considered by the Court at the relevant time. *See Wilder v. Stephen F. Austin State Univ.*, 552 F. Supp. 3d 639, 663 (E.D. Tex. 2021) (denying a motion to strike and stating that "if the expert's damages estimate is too high because his model considers an extra year's worth of pay, that is fertile ground for cross examination."). If Plaintiffs prevail at trial, IBM is free to challenge Rambin's calculations, methodology, and conclusions during cross-examination at the damages hearing.

Moreover, if the Court determines the front pay issue should be submitted to the jury for an advisory opinion on damages, *Daubert* does not require the exclusion of Rambin's testimony. IBM finds fault with Rambin's front pay analysis as follows: (1) work-life statistics are not permitted in employment lawsuits; (2) Rambin used an outdated Bureau of Labor Statistics report and was unfamiliar with a 2015 article on the issue; (3) his use of averages was insufficiently particularized; (4) he

impermissibly accepted Plaintiff's statements they would work until 70; and (5) he improperly relied on Plaintiffs' statements about their mitigation of damages.

    1.    Total work-life expectancy data, use of outdated table, insufficiently particularized data

With regard to work-life statistics, IBM's expert, Dr. Dwight Steward, alleges Rambin's use of them to formulate his opinion is incorrect, as they relate to how long an individual might work for that individual's life, and not for one employer. The undersigned finds this issue may be addressed at trial through cross-examination and through Dr. Steward's own testimony, and does not necessitate striking Rambin's expert report. With regard to Rambin's reliance on a particular work-life table, this issue can also be addressed on cross-examination and goes to the weight of his testimony, and not its admissibility. With regard to IBM's complaint that Rambin failed to consider evidence specific to Plaintiffs or any evidence specific to the industry in which Plaintiffs worked, again this testimony is subject to cross-examination and goes to the weight of the evidence.

    2.    Reliance on Plaintiffs' statements that they would work until 70

As to Rambin's reliance on Plaintiffs' statement that they planned to work until they are 70, IBM relies on *Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475, 478 (5th Cir. 1984), for the proposition that courts must use work-life expectancy data to calculate future earnings. However, *Madore* also states that "it may be shown by evidence that a particular person, by virtue of his health or occupation or other factors, is likely to live and work a longer, or shorter, period than the average. Absent such evidence, however, computations should be based on the statistical

7

average." *Id.* (internal citations omitted). Importantly, *Madore* is limited to the context of maritime cases. *See Naquin v. Elevating Boats, LLC*, No. 10-4320, 2012 WL 1664257, at *5 (E.D. La. May 11, 2012). And IBM identifies no controlling published caselaw stating it should be applied in the context of an employment law case or to exclude an expert's testimony.

In another case, where an expert did not rely merely on the statistical work-life expectancy data to calculate future earnings, the court found that the expert's opinion, based on the claim that "current work life estimates '[do not] take into consideration individual circumstances that determine a person's economic ability and/or incentive to retire before the social security retirement age,'" was more appropriately addressed on cross-examination. *Wilson v. Noble Drilling (U.S.) Inc.*, No. 08-4940, 2009 WL 9140547, at *2 (E.D. La. Nov. 9, 2009); *see also Barto v. Shore Const., L.L.C.,* 801 F.3d 465, 475 (5th Cir. 2015) (bringing into question whether specific testimony that a plaintiff intended to work until a certain age was sufficient to establish individual circumstances sufficient to show plaintiff would work longer than statistical work life estimates). IBM has failed to show that Rambin's calculation which incorporates the assumption that Plaintiff will work until 70 is clearly inadmissible. Accordingly, this issue is better addressed at trial.

3.    Reliance on Plaintiffs' statements regarding mitigation

IBM further complains that Rambin improperly relies on the Plaintiffs' statements regarding their work-life expectancy, including statements that they would not get another job and mitigate their damages. IBM also points out the fact

some Plaintiffs also stated they are not seeking reinstatement asserting this renders them ineligible for front pay, and Rambin's report fails to address this. That Rambin relied on Plaintiffs' interpretation of a disputed fact does not render his opinion irrelevant. *See, e.g.*, *Pipitone,* 288 F.3d at 249-50 (jury entitled to hear expert testimony and decide whether to accept or reject it after considering whether predicate facts on which expert relied were accurate); *Gen. Elec. Cap. Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.*, No. SA-03-CA-189-RF, 2004 WL 5495588, at *6 (W.D. Tex. Oct. 6, 2004) (expert testimony should not be excluded because it is based on one party's version of contested facts).

Thus, the undersigned finds that Defendants' objections to the expert report and testimony of Rambin on the issue of front pay are overruled.

### B.    Exclusion of Improper Discount Rate

IBM next moves to exclude Rambin's testimony and report based upon his use of an outdated discount rate. Rambin's Supplemental Report updated the discount rate. The undersigned finds that IBM's motion regarding this issue is moot, and to the extent Rambin's report is based upon factual inaccuracies, this is an issue to be addressed at trial.

### C.    Exclusion of Fringe Benefits Calculations

IBM moves to exclude Rambin's report and testimony regarding fringe benefits asserting Rambin's report and testimony on this issue is unreliable and has no factual basis. The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592

n.10; *Johnson v. Arkema, Inc.*, 685 F.3d 452 (5th Cir. 2012). The Court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citation omitted). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

IBM argues that in his Report, Rambin estimates that each Plaintiff would have received fringe benefits worth an estimated 44.38% of their gross income based on what they assert is unsound methodology of manipulating national statistics released by the Bureau of Labor Statistics. Rambin determined this percentage by dividing the national average cost of benefits, $22.50, by the national average cost of wages and salaries, $50.70, for "management, business and financial" roles.  IBM argues that Rambin's methodology is unsupported and flawed because: (1) it is inappropriate to calculate fringe benefits in damages calculations when plaintiffs have obtained subsequent employment with comparable benefits to those they received from IBM;  (2) it is inappropriate to rely on national statistics to determine lost fringe benefits instead of data specific to each individual Plaintiff's circumstances;  (3) Rambin's manipulation of the national statistical data is not

based on any methodology; and (4) Rambin should not have blindly relied on Plaintiffs' statements of their benefits at subsequent employers.

With regard to Plaintiffs who have secured higher-paying employment, Rambin has adjusted his fringe benefit analysis to take those benefits into account including offsets of benefits and adjusted his opinions in his Supplemental Report taking any new evidence of employment into account. Rambin's testimony on this issue is best addressed at trial.

With regard to the issue of Rambin's use of the Bureau of Labor Statistics Report to generate a fringe benefit multiplier, Rambin has explicated his choice of methodology. IBM is welcome to attack the factual bases of his methodology at trial, including his failure to use more particularized calculations regarding each plaintiff and his choice to analyze each plaintiff's benefits under the "management, business, and financial" category. Rambin's testimony on this issue need not be excluded as inadmissible on this basis.

With regard to Rambin's methodology and "data manipulation," IBM may freely cross-examine Rambin on his methodology, calculations, and materials used to develop his opinions at trial. "'[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" A*llison v. NIBCO, Inc.*, No. 9:02-CV-172, 2003 WL 25685229, at *1 n.1 (E.D. Tex. May 21, 2003).

With regard to Rambin's reliance on Plaintiffs' statements regarding their benefits at subsequent employers, IBM is free to attack the facts supporting Rambin's analysis at trial. "Vigorous cross-examination, presentation of contrary

11

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

The undersigned finds that Rambin's testimony on this issue should not be excluded.

### D.     Report Is Inaccurate

IBM moves to exclude Rambin's expert testimony and report asserting that it is based on various factual inaccuracies including the monies received by the various Plaintiffs in employment obtained after leaving IBM and their salaries and roles while at IBM. Plaintiffs assert that any factual errors have been corrected in Rambin's Supplemental Report. To the extent any factual inaccuracies in his testimony or report persist, the undersigned finds those can be addressed on cross-examination at trial and are an inadequate basis for exclusion of Rambin's testimony.

## IV.     CONCLUSION

The undersigned ORDERS that  Defendant International Business Machines Corporation's Motion to Exclude Expert Report and Testimony of Mark Rambin, Dkt. 98, is DENIED.

This case should be **RETURNED** to the docket of the Honorable David Ezra.

SIGNED July 8, 2022.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE