UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CHARLES TOWNLSEY, | § | |
| MICHAEL SAURO, WALTER | § | |
| NOFFSINGER, ROSA | § | |
| DAVIDSON, MICHAEL KELLY, | § | No.  A-20-CV-00969-DAE |
| TITON HOQUE, THANH DO, | § | |
| JANET GELPHMAN, | § | |
| *Plaintiffs* | § | |

**v.**

**INTERNATIONAL BUSINESS**
**MACHINES CORPORATION,**
*Defendant*

**ORDER**

Before the Court is Defendant International Business Machines Corporation's (IBM) Motion for a Protective Order to Limit Scope of 30(b)(6) Deposition, Dkt. 103, along with Plaintiff's Response. The District Court referred the motion to the undersigned for resolution. For the reasons stated below, the undersigned finds that IBM's motion should be DENIED IN PART and GRANTED IN PART.

**I.   BACKGROUND**

The remaining Plaintiffs in this employment discrimination suit—Charles Townsley, Michael Sauro, Walter Noffsinger, Rosa Davidson, Michael Kelly, Titon Hoque, Janet Gelphman, and Thanh Do—allege that IBM unlawfully engaged in age discrimination when the company terminated Plaintiffs' employment, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), and various state laws. Dkt. 5. The dispute here relates to the scope

1

of corporate representative deposition notices served by Plaintiffs pursuant to Federal Rule of Civil Procedure 30(b)(6). Dkt. 103.

Pursuant to the parties' agreed scheduling order, discovery ended on April 1, 2022. Dkt. 37. As that Order notes, "Counsel may, by agreement, continue discovery beyond the deadline, but there will be no intervention by the Court except in extraordinary circumstances." *Id.* Neither party argues that this motion presents extraordinary circumstances, and based on the Court's review, there do not appear to be any. The Court will nonetheless address this motion on its merits. The Court cautions the parties, however, as it has previously, Dkt. 96, that future requests for court intervention in discovery-related disputes can be denied on this basis.

## II.   ANALYSIS

IBM seeks to limit the scope of four topics listed in Plaintiffs' 30(b)(6) deposition notice. The topics, referred to in IBM's motion as Topics 1, 2, 11, and 12,[1] read as follows:

> [1] IBM's headcount composition since 2014, including but not limited to, total headcount by year for All Business Segments and All Geographic Regions.
>
> [2] For All Business Segments and All Geographic Regions: i) the date of notification for each wave; ii) the date of separation for each wave; iii) the number of employees separated; iv) the average age of all employees immediately prior to commencement of the RA; and v) the average age of all employees immediately after completion of all waves of the following resource actions ….

---

[1] The Court assumes here, as Plaintiffs note in their response, that Topics 1, 2, 11, and 12, correspond to the first, second, eleventh, and twelfth topics listed in Plaintiffs' notice. *See* Dkt. 117, at 2 nn.2-4. The actual notice lists these topics as "a)"; "b)"; "d)"; and "e)." Dkt. 103-2, at 19-20.

> [11] The total number of employees hired by IBM since 2014, by year, for All Business Segments and All Geographic Regions.
>
> [12] The total number of Early Professional Hires hired since 2014, by year, for All Business Segments and All Geographic Regions.

Dkt. 103-2, at 2-3. IBM primarily takes issue with the phrase "All Geographic Regions," Dkt. 103, at 3, which the notice defines as including "North America (NA), Latin America (LA), Europe, Middle East and Africa (MEA), Asia Pacific (AP), Japan and Greater China Group (GCG)," Dkt. 103-2, at 2. IBM seeks to limit the scope of these topics to information related to employees of IBM U.S. Dkt. 103, at 3. Consistent with the Court's order resolving the parties' previous discovery dispute, *see* Dkt. 96, IBM also seeks confirmation that the "discovery of demographic data should be limited to the business groups in which Plaintiffs worked at the time of their separation and to resource actions funded by the Concord, Maple, and Palm pools," Dkt. 103, at 3.

IBM first argues that data regarding foreign employees outside the United States is irrelevant to Plaintiffs' claims. Dkt. 103, at 12-15. Those claims primarily arise under ADEA, which, IBM argues, courts have recognized is not applicable to foreign employees outside the United States. Dkt. 103, at 12 and n.49 (collecting cases). IBM also points to the fact that labor laws outside the United States vary materially from the substantive law forming the basis for Plaintiffs' claims, and thus data related to non-U.S. employees would be irrelevant. Along those same lines, IBM notes that the EEOC similarly opined in connection with the disclosures required for the Older Workers Benefit Protection Act that "employers 'are not required to include

3

in OWBPA disclosures employees working outside the United States who are not U.S. citizens.'" *Id.* (quoting U.S. Equal Emp. Opportunity Comm'n, Comm'n Opinion Letter: Older Worker Benefit Protection Act (Jan. 14, 2021)). IBM closes by complaining that requiring its corporate representatives to be conversant in data related to employees outside the United States would be unduly burdensome, considering the limited relevance of this data and the fact that IBM operates in over 175 countries across the world. *Id.* at 16-17.

In their 29-page[2] response, Plaintiffs argue that company-wide data is necessary to paint a complete picture of what they contend was a global discrimination scheme orchestrated at the highest levels of the company. Dkt. 117, at 3-4, 6-7, 8-12. Plaintiffs point to various public communications in which IBM representatives allegedly boasted of the company's efforts to employ a more youthful workforce. *Id.* at 4-6. Plaintiffs rest their legal argument on the decision in *Hageman v. Accenture LLP*, No. CIV. 10-1759 RHKFLN, 2011 WL 13136510 (D. Minn. Sept. 21, 2010). In that case, the court granted plaintiffs' motion to compel discovery related to overseas employees where plaintiffs alleged the defendant employer's "decision to terminate 'Service' employees [like the plaintiffs] and replace them with overseas employees was made at the corporate level." *Id.* at *3.

---

[2] Local rule CV-7(c)(2) states that "discovery … motions are limited to 10 pages." The parties have made liberal use of requests to exceed the limits imposed by this rule, with little or no attempt to explain good cause for why their arguments could not possibly be contained within 10 pages. Motions to exceed the local rules' page limitations should not be utilized as a substitute for editing one's work. The Court has granted these requests previously, but future requests will be met with extreme skepticism.

The Court finds the reasoning in *Hageman* to be persuasive here. The remaining Plaintiffs in this case allege that they were discriminatorily relieved of their duties and replaced by younger workers, including overseas hires. Dkt. 117, at 17. And, like the plaintiffs in *Hageman*, Plaintiffs contend that the allegedly discriminatory hiring decisions were made at a corporate level. 2011 WL 13136510, at *3; *see also Zhao v. Deutsche Bank AG*, No. 13CV02116 (GBD) (DF), 2014 WL 12526256, at *1 (S.D.N.Y. June 24, 2014). Plaintiffs correctly note that the authority cited by IBM focuses its reasoning on parties' standing—but concept of discoverability is not so limited. "[T]he scope of discovery is limited to material that is relevant to the claim or defense of the plaintiff or defendant, and if the relevant information would not be admissible at trial it must appear reasonably calculated to lead to admissible evidence." *Hinds v. Baker Hughes, Inc.*, No. MO-06-CV-134, 2007 WL 9710939, at *1 (W.D. Tex. Aug. 8, 2007) (citing *Openheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)). Keeping this broad scope in mind, the Court concludes that it would not be proper to limit these 30(b)(6) topics to information related to IBM U.S. employees, and that IBM's compliance with the "All Geographic Regions" scope of the topics would not be unduly burdensome in light of the potential probative value of the material sought. Constraining these topics as IBM proposes would artificially and unnecessarily restrict Plaintiffs' discovery of potentially admissible evidence.

Finally, IBM is correct that the Court has already ruled that discovery of demographic data in this case is limited to the groups in which Plaintiffs worked at the time of their separation and to resource actions funded by the Concord, Maple,

and Palm pools. *See* Dkt. 96. The Court considers Plaintiffs' arguments to the contrary as an attempt to relitigate this already-settled issue. Accordingly, the Court finds IBM's motion in this respect should be granted.

### III.   CONCLUSION

For the foregoing reasons, the Court **DENIES IN PART and GRANTS IN PART** IBM's motion, Dkt. 103. Specifically, the Court **DENIES** IBM's motion seeking to limit Topics 1, 2, 11, and 12 of Plaintiffs' 30(b)(6) Notice to employees of IBM U.S., and the Court **GRANTS** IBM's motion regarding discovery of demographic data and **ORDERS** that such discovery is limited to the groups in which Plaintiffs worked at the time of their separation and to resource actions funded by the Concord, Maple, and Palm pools.

SIGNED July 8, 2022.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE